CITY OF NEWARK, APPELLANT, *v.* LUCAS, APPELLEE.

[Cite as Newark *v.* Lucas (1988), 40 Ohio St. 3d 100.]

(No. 88-69—Submitted October 4, 1988—Decided December 21, 1988.)

*Bill L. Slocum,* assistant law director, for appellant.

LOCHER, J. The issue presented in this action is whether appellee's blood results were properly suppressed by the trial court when the sole basis for suppression was that the blood was not withdrawn within two hours of the time of her alleged violations of the ordinance. For the reasons that follow, we hold that the test results were properly suppressed as to her alleged violation of the ordinance relating to

operating a vehicle with a prohibited concentration of alcohol in her blood. We also hold that the test results were improperly suppressed as to her alleged violation of the ordinance relating to operating a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse.

The ordinance allegedly violated in this action is obviously patterned after R.C. 4511.19. Thus, any analysis of the issue in this action requires references to that statute and any case law relevant thereto. In *Cincinnati v. Sand* (1975), 43 Ohio St. 2d 79, 72 O.O. 2d 44, 330 N.E. 2d 908, this court examined the admissibility at trial of the results of a Breathalyzer test. In paragraph two of the syllabus, we held:

"The results of a Breathalyzer test, administered pursuant to R.C. 4511.19, may only be admitted in evidence upon the affirmative establishment of facts supporting the following conditions:

"a. The bodily substance must be withdrawn within two hours of the time of such alleged violation.

"b. Such bodily substance shall be analyzed in accordance with methods approved by the Director of Health.

"c. The analyses shall be conducted by qualified individuals holding permits issued by the Director of Health pursuant to R.C. 3701.143."[4]

R.C. 4511.19, as analyzed in *Cincinnati v. Sand, supra,* provided in relevant part:

"No person who is under the influence of alcohol or any drug of abuse shall operate any vehicle, streetcar, or trackless trolley within this state.

"In any criminal prosecution for a violation of this section, or ordinance of any municipality relating to driving a vehicle while under the influence of alcohol, the court may admit evidence on the concentration of alcohol in the defendant's blood at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation. * * * Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code. Such evidence gives rise to the following:

"(A) If there was at that time a concentration of less than ten hundredths of one per cent by weight of alcohol, but more than five hundredths of one per cent by weight of alcohol, in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of alcohol, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant.

"(B) If there was at that time a concentration of ten hundredths of one per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol.

"(C) If there was at the time a concentration of five hundredths of one per cent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of alcohol. * * *"

" '* * * The purpose of the presumption is to eliminate the need

---

[4] The Breathalyzer test in that action had been administered within two hours of the alleged violation. See *Cincinnati v.*

*Sand, supra,* at 86, 72 O.O. 2d at 48, 330 N.E. 2d at 912.

for expert testimony which would otherwise be necessary to relate the numerical figure representing a percentage of alcohol by weight in blood as shown by the result of a chemical test, with the common understanding of being under the influence of alcohol. * * *' " *State* v. *Vega* (1984), 12 Ohio St. 3d 185, 187, 12 OBR 251, 253, 465 N.E. 2d 1303, 1306, citing *State* v. *Myers* (1971), 26 Ohio St. 2d 190, 55 O.O. 2d 447, 271 N.E. 2d 245.

It is significant to recognize that in reaching our determination in *Cincinnati* v. *Sand, supra,* we stated in footnote one that: "It should be noted at this point that it is not the results of the Breathalyzer test that give rise to its objections, *but the presumptions established by this statute* [R.C. 4511.19] which have been purposely omitted since they are not involved in the question presented." (Emphasis added.) *Id.* at 85, 72 O.O. 2d at 47, 330 N.E. 2d 911. This footnote indicates that the court was well aware of the importance to be placed on the determination of whether the prosecution had set a solid foundation for admitting the results of such tests because of the presumptions established by those results under R.C. 4511.19. Included in that solid foundation was the requirement that the "bodily substance [must be] withdrawn within two hours of the time of such alleged violation."

The General Assembly amended R.C. 4511.19, effective March 16, 1983, and made it illegal to operate a vehicle not only while under the influence of alcohol, but also with a proscribed level of alcohol content in one's blood, breath, or urine. R.C. 4511.19 (A)(2), (3) and (4).[5] The term "pre-

sumption" was eliminated from R.C. 4511.19 and these *"per se"* offenses do not involve presumptions. The *per se* offenses define "the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others." *State* v. *Tanner* (1984), 15 Ohio St. 3d 1, 6, 15 OBR 1, 5, 472 N.E. 2d 689, 693. In determining whether one of these *per se* offenses was committed by the defendant, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant operated a vehicle within the state and that the defendant's chemical test reading was at the proscribed level. The critical issue at trial is the accuracy of the test, not the behavior of the accused. See Katz & Sweeney, Ohio's New Drunk Driving Law: A Halfhearted Experiment in Deterrence (1983-1984), 34 Case W. Res. L. Rev. 239, 243.

Under R.C. 4511.19(A)(2), (3) and (4) and Newark Ordinance 434.01(a) (2), (3) and (4), the results of the chemical test of the bodily substance are clearly an element of the proof of the offense. The results of such tests and their accuracy are crucial to a determination of guilt or innocence under R.C. 4511.19(A)(2), (3) and (4). The accuracy of these tests has reached an even higher level of importance than that required at the time of *Cincinnati* v. *Sand, supra,* when we placed great emphasis on them because of the presumptions involved.

R.C. 4511.19(B) and Newark Ordinance 434.01(c) do not, standing alone, expressly exclude evidence. However, it is clear from reading these sections in conjunction with the *per se* offenses set forth in R.C. 4511.19(A) and Newark Ordinance 434.01(a) that the respective legislative bodies have determined that if the amount of

---

[5] R.C. 4511.19 was also amended effective March 20, 1987.

alcohol concentration in the driver's bodily substance exceeds the proscribed amount as shown by a properly administered test given within two hours of the alleged violation, then a *per se* offense has been committed. Admission of the chemical analysis of bodily substances withdrawn beyond the two-hour limit into evidence in prosecutions for violations of these sections would defeat that legislative intent and produce confusing, unreliable and inconsistent verdicts.

Therefore, we hold that in a criminal prosecution for violation of R.C. 4511.19(A)(2), (3) or (4), or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, the results of a properly administered bodily substances test may be admitted in evidence only if the bodily substance is withdrawn within two hours of the time of the alleged violation. Accordingly, the trial court in the instant action properly suppressed appellee's test results as to her alleged violation of the ordinance relating to operating a vehicle with a prohibited concentration of alcohol in her blood.

We now turn to the question of whether appellee's test results were properly suppressed with regard to her alleged violation of Newark Ordinance 434.01(a)(1). That section is patterned after R.C. 4511:19(A)(1).

In prosecutions for violations of such sections, the amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. See Taylor, Drunk Driving Defense (2 Ed. 1986) 394, Section 6.0.1. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section. It is the behavior of the defendant which is the crucial issue. The accuracy of the test is not the critical issue as it is in prosecutions for *per se* violations. Furthermore, the statutory presumptions which existed at the time of *Cincinnati* v. *Sand, supra,* no longer exist. Thus, no presumptive weight can be given to the test results under these sections. The test results, if probative, are merely considered in addition to all other evidence of impaired driving in a prosecution for this offense.

In light of the fact that no presumptive weight is given to the test results under R.C. 4511.19 and because those results are not dispositive to a determination of innocence or guilt under R.C. 4511.19(A)(1), we refuse to read R.C. 4511.19(B) in an exclusionary manner in prosecutions for violations of R.C. 4511.19(A)(1) with regard to the admission of test results of bodily substances withdrawn more than two hours after the time of the alleged violation. As stated above, R.C. 4511.19(B) and Newark Ordinance 434.01(c) do not, standing alone, exclude evidence of chemical test results. Furthermore, the fact that a bodily substance is withdrawn more than two hours after the time of the alleged violation does not, by itself, diminish the probative value of the test results in an R.C. 4511.19(A)(1) prosecution.[6]

However, in introducing such results, expert testimony, as was pro-

---

[6] The trial court did not exclude this evidence on the grounds that it lacked probative value or that its probative value was substantially outweighed by the danger of unfair prejudice. See Evid. R. 403. The sole basis for suppression was that appellee's blood sample was withdrawn after the "two hour requirement of section 434.01, of the Newark Ordinance."

posed by the prosecution in the instant case, would be necessary to relate the test results to the defendant and to the time of the alleged violation, as well as to relate the numerical figure representing a percentage of alcohol by weight in the bodily substance, as shown by the results of the chemical test, to the common understanding of what it is to be under the influence of alcohol.[7] See *Myers, supra,* at 198, 55 O.O. 2d at 452, 271 N.E. 2d at 251. Naturally, as in any action brought pursuant to R.C. 4511.19, the defendant would have the opportunity to challenge the accuracy of his specific test results.

We therefore hold that in a criminal prosecution for violation of R.C. 4511.19(A)(1), or of a municipal ordinance relating to operating a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation.

In the instant action, appellant planned to introduce the test results at trial together with the testimony of an expert toxicologist who would relate the test results back to the time of the accident and state the effect of the alcohol concentration upon the appellee at that time. The trial court suppressed the results as to all charges on the basis of the language contained in Newark Ordinance 434.01(c). Based on the foregoing, we find that the trial court improperly suppressed those results as to appellee's alleged violation of the ordinance relating to the operation of a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse.

Accordingly, we affirm the decision of the court of appeals in part, reverse in part, and remand this cause to the trial court for further proceedings on the charge of violating Newark Codified Ordinance 434.01(a)(1).

*Judgment affirmed in part, reversed in part and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

---

[7] It also must be established by the prosecution that the test was properly administered and analyzed in accordance with the remainder of R.C. 4511.19(B).