### Coshocton v. Davis
*[Cite as 8 AOA 212]*

*Case No. 90-CA-7*
*Coshocton County, (5th)*
*Decided December 4, 1990*

*Greg A. Newman, Police Prosecutor, 760 Chestnut Street, Coshocton, Ohio 43812, for Plaintiff-Appellee.*

*Charles E. Mathay, 409 1/2 Main Street, Coshocton, Ohio 43812, for Defendant-Appellant.*

GWIN, J.

Defendant-appellant, Steven W. Davis (appellant), pled no contest to and the trial court found appellant guilty of DUI in viola-

tion of Coshocton Ordinance §§75.01(A)(1) and (A)(4).[1] Appellant now seeks our review and assigns the following is error:

*"ASSIGNMENT OF ERROR NO. I.*
"THE TRIAL COURT ERRED IN ITS DE-NIAL OF THE APPELLANT'S MOTION TO SUPPRESS THE INTOXILYZER TEST RE-SULTS OF THE APPELLANT BASED ON 'SUBSTANTIAL' COMPLIANCE WITH DE-PARTMENT OF HEALTH REGULATIONS, 3701-53-02(C).

*"ASSIGNMENT OF ERROR NO. II.*
"THE TRIAL COURT ERRED IN OVER-RULING THE DEFENSE HEARING MO-TION TO STRIKE THE ENTIRE TESTIMO-NY OF THE STATE'S ONLY WITNESS REGARDING THE RFI CALIBRATION PROCEDURES OF THE INTOXILYZER FOR FAILURE TO SHOW HIS QUALIFI-CATIONS UNDER DEPARTMENT OF HEALTH REGULATIONS 3701-53-05(B) & (C) AS A SENIOR OPERATOR."

I

In his first assignment, appellant claims that the trial court erred in failing to suppress the intoxilyzer results. We agree.

The record reflects that the Radio Frequency Interference (RFI) survey test was performed by police officers Frank Thomas, William Kobel, and Kristy Huebner. Two separate RFI survey forms were completed as part of this testing. These forms are copies of the Department of Health Regulation 3701-53-02, appendix G. The two forms indicate that the City of Coshocton (City) used Motorola and General Electric handheld radios (survey radios) to conduct said survey.

In the first paragraph of these forms is the following instruction:

"If radios are *capable* of multiple frequency transmission, *each band is to be tested,* using a separate form for each band." (Emphasis added).

Here, it was undisputed that two frequencies were tested. Thus, in order to comply with the health regulations, the survey radios should have been capable of transmitting only two frequencies. However, in this case, the City provided, in the form of Deputy Kobel's testimony, only contradictory evidence of the actual number of frequencies the survey radios were capable of transmitting.

At one point, Kobel testified that the survey radios had *three* frequencies. (T.13, lines 18 & 19). The officer later stated that the survey radios had only *two* frequencies, but had *"three different functions."* (T.33, lines 20 & 21). When questioned whether the radios could transmit over a third frequency, Kobel responded:

"It switches it and it goes back to the - one of these two frequencies. *I'm not an electrical expert. I don't know."* (Emphasis added).

T.33, lines 23-25.

Our sentiments exactly. It appears that the current trend of RFI appeals to this court attempts to place us in the position of reviewing all the evidence as if we were scientific or "electrical experts" and determine whether some evidence of non-compliance with the RFI health regulations is so minor and inconsequential as to permit a finding of substantial compliance with those regulations.

We decline to assume such a position, but instead choose to adhere to our prior holdings that substantial compliance will not be found where we are unable to determine whether evidence of noncompliance is minor and inconsequential to the accuracy of a breath test. *State v. Laivins* (Apr. 25, 1989), Delaware App. No. 88-CA-35, unreported; *City of Coshocton v. Huffman* (Apr. 13, 1990), Coshocton App. No. 89-CA-26, unreported; *State v. Kirkpatrick* (June 1, 1988), Fairfield App. No. 43-CA-87, unreported.[2] This position is necessary because the test results provide the "ultimate answer to the question of a violation of R.C. 4511.19 (A) (3) that amounts to *per se* violation of law."[3] *Id.*

When reviewing evidence of noncompliance in this manner, we need not guess whether some noncompliance rises to the level of substantial compliance, while other noncompliance does not. For example, is it substantial compliance if only two bands are tested on a three-frequency survey radio?

Here, the City failed to present sufficient evidence to support the trial court's finding that the City substantially complied with the RFI health regulations.[4]

First, as stated above, it is unclear if the City tested only two of three frequencies on the survey radio. Additionally, the record suggests that the City failed to present sufficient evidence of whether it complied with the RFI regulations regarding the external RFI detector. In the instant case, the

intoxilyzer surveyed was equipped with an external RFI detector. The survey form sheets contain the following paragraph:

"EXTERNAL RFI DETECTORS: If an external detector is utilized, it is to be tested on each of the 8 lines for sensitivity. If the detector senses RFI, mark diagram with an 'O' at the farthest distance from the detector where interference is observed. Sensitivity of detector units is to be adjusted so that the detector will be more sensitive to interference than the instrument."

Kobel testified that he never adjusted the sensitivity of the detector. The City's evidence leaves open the question of whether this apparent noncompliance was minor and inconsequential to the accuracy of appellant's breath test.

For these reasons, we find the City failed to present sufficient evidence that would allow the trial court to determine if the evidence of noncompliance rose to the level of substantial compliance with the RFI health regulations. Accordingly, we sustain this first assignment.

### II

We overrule appellant's second assignment in that the trial court could have found that Deputy Kobel, who had a senior operator's license for four or five years, was qualified to testify on the subject of RFI calibrations procedures.

For the foregoing reasons, the judgment of the Coshocton Municipal Court overruling appellant's motion to suppress his breath test results is reversed. This cause is remanded to that court for further proceedings according to law.

SMART, J., concurs and MILLIGAN, J., concurs separately.

MILLIGAN J., concurring.

I concur in the opinion and judgment of this court and write separately only to underscore the distinction between the scientific test and charges of *per se* violation of R.C. 4511.19 (A)(3), and (A)(4) versus R.C. 4511.19 (A)(1), (where the key is not violation of the scientific standard, but operation under the influence).

Here appellant was originally charged with both, but sentenced only for violation of the *per se* statute, mirror ordinance image, R.C. 4511.19 (A)(4).

Where the criminal conduct is a violation of the scientific test, the integrity of the test is a critical element of the offense itself. Thus the requirements for using the test for this purpose must be strictly followed. On the other hand, where the test is simply one of the pieces of evidence that the person was operating under the influence, technical compliance with the setup and operational regulations goes to the weight and sufficiency of such evidence, not its admissibility. *Newark v. Lucas* (1988), 40 Ohio St. 3d 100.

Here, it remains for another day to decide whether, upon remand, the appellant can be sentenced for the (A)(1) violation.

---

[1] The trial court chose only to sentence appellant on the (A)(4) conviction.

[2] Also see *State v. Porteus* (Apr. 18, 1989), Delaware App. No. 88-CA-19, unreported, where we underscored the importance of showing that the health regulations are followed in R.C. 4511.19(A)(3) cases.

[3] Coshocton Ordinance §75.01(A)(4) is the local equivalent of R.C. §4511.19(A)(3).

[4] The trial court's specific finding of substantial compliance necessarily imports a finding of some noncompliance. The trial court did not specify what the noncompliance was.