OPINION
Defendant-appellee, Kenneth Swingle, was arrested in Mason, Ohio on December 5, 1996 for driving while under the influence of alcohol in violation of R.C. 4511.19. Swingle was taken to the Lebanon Post of the Ohio State Highway Patrol where he voluntarily submitted to a breathalyzer test. The results of the test indicated that Swingle had a concentration of alcohol of .101% of a gram per two hundred ten liters of breath. Swingle was subsequently charged with a violation of R.C. 4511.19(A)(1) (driving under the influence of alcohol), and a violation of R.C.4511.19(A)(3) (driving with a prohibited blood alcohol content). On February 27, 1997 Swingle was arraigned and entered pleas of not guilty to both counts of the indictment.
On March 7, 1997, Swingle filed a motion to suppress the result of the breathalzyer test alleging, among other things, that the result of the test was inadmissible because the machine was not properly calibrated due to improper authentication of the test solution. A hearing on the motion to suppress was held on July 22, 1997. On September 4, 1997, the Warren County Common Pleas Court granted Swingle's motion to suppress, from which the state of Ohio filed an appeal under Warren App. No. CA97-09-094.
On September 5, 1997, the state filed a "motion for appropriate relief," requesting that the state be permitted to use the breath alcohol test in prosecuting the R.C. 4511.19(A)(1) charge. On September 10, 1997, the Warren County Court of Common Pleas overruled the state's motion, from which the state filed an appeal under Warren App. No. CA97-09-096. On September 26, 1997, this court ordered, sua sponte, that since the cases numbered CA97-09-094 and CA97-09-096 arose out of the same set of factual circumstances and involve the same parties, that the cases be consolidated for the sole purpose of this appeal. On appeal, the state presents two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT, IN SUPPRESSING THE DEPENDANT-APPELLEE'S BREACH ALCOHOL TEST RESULT ON THE 4511.19(A)(3) CHARGE.
The state argues that the trial court erred in granting Swingle's motion to suppress because his breathalyzer test was conducted and analyzed in accordance with the methods approved by the director of health. Swingle argues that the breathalzyer machine was not calibrated in accordance with methods approved by the director of health, and therefore any breathalyzer results are unreliable and inadmissible.
R.C. 3701.143 authorizes the director of health to issue regulations regarding blood, breath, and urine testing for drugs and alcohol. The Ohio Department of Health imposes certain requirements for the administration of alcohol tests. One of these requirements is that the breathalyzer machine used must be calibrated at least once every seven days. Ohio Adm. Code3701-53-04. Calibration is the process by which the breathalyzer machine is tested for its range of accuracy. Ohio Adm. Code3701-53-04 provides in pertinent part:
 A. Approved evidential breath testing instruments shall be checked for calibration no less frequently than once every seven days by a senior operator using a solution of ethyl alcohol approved by the director of health and using the calibration checklist for the instrument being checked, as set forth in appendices A to G of this rule.
 (1) A calibration check of a breath testing instrument is valid when the result of the calibration check is a target value plus or minus five one-thousandths (0.005) grams per two hundred ten liters. The results of the calibration check shall be recorded on a calibration checklist. A calibration solution shall not be used more than three months after its first date of use. The date of first use for the calibration solution and its identification data shall be recorded on the calibration checklist used for that calibration check.
As stated, the result of the calibration is valid when the result of the calibration check is at target value plus or minus five one-thousandths (0.005) grams per two hundred ten liters. At the hearing on his motion to suppress, Swingle presented evidence that the target value as stated in the calibration solution used in the instant case, batch number 96901, was incorrect.
At the hearing, the defense called an expert witness, Dr. Albert Staubus, who questioned the procedures used by the department of health in approving batch number 96901 of calibration solution used in testing Swingle's breath for alcohol. Dr. Staubus based his opinion on the results of an independent audit of the calibration solution conducted under the auspices of the Ohio Department of Health. Dr. Staubus testified that an independent audit was conducted on nineteen batches of calibration solution after Leonard Porter, then chief of alcohol testing for the department of health, issued a memorandum questioning the accuracy of target values stated on the certificates of approval. Batch 96901 was one of the nineteen batches of solution which was subject to an independent analysis.
According to Dr. Staubus, the department of health's certificate of approval issued for batch 96901, with a target value of .100, was based on information provided by the solution's manufacturer, Repco. The independent analysis of batch 96901 conducted at the request of the department of health indicated that the target value for batch 96901 should be .101 +/- .005.
Notwithstanding the independent analysis, the department of health did not change the target value of batch 96901 and maintained that the target value of .100 was the proper value to be used when calibrating the breathalyzer machine. The calibration check performed on December 1, 1996, just prior to Swingle's breathalzyer test, resulted in a reading of .095, when if used with a calibration value of .100, was within the +/- .005 allowable variance, meaning that the breathalyzer machine was working properly.
Swingle asserts that because the proper calibration value should have been .101 based on the independent analysis, the calibration check on December 1, 1996 which resulted in a .095 reading was beyond the allowable +/- .005 variance. Swingle argues that if the target value of the calibration solution was .101, then the calibration check done on December 1 could have been as low as .096 or as high as .106 and still been within the acceptable +/- .005 variance. Swingle asserts that because the calibration check of December 1, 1996 was unreliable, his test result of .101 was also unreliable.
For blood alcohol test results to be admissible in a criminal prosecution, the state must show: (1) the test was conducted within two hours of the alleged violation; (2) the test was conducted and analyzed in accordance with the methods approved by the Director of Health and (3) the test was conducted by a qualified individual. Cincinnati v. Sand (1975), 43 Ohio St.2d 79, paragraph one of the syllabus.
At the suppression hearing, stipulations were entered into concerning the admissibility of documents and foundation testimony of the police officers. The documents stipulated to included the prior calibration of the BAC Datamaster used to administer Swingle's breathalyzer test, the test report form, the Radio Frequency Interference Survey, the Results Slip, the permits of the senior operators, and the Ohio Department of Health certificate of approval of the batch solution used to calibrate the machine. Accordingly, the only issue presented for our review is the second element of Sand, i.e., whether the test was conducted and analyzed in accordance with the methods approved by the director of health.
A defendant must directly and specifically raise the issue of the reliability of test results in a pretrial motion to suppress. State v. Luhrs (1990), 69 Ohio App.3d 731, 736. The state is only required to prove that the test was conducted in substantial, not strict, compliance with department of health regulations. Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3. If the state shows substantial compliance, then the burden shifts to defendant to show he was prejudiced by the failure to strictly comply with the regulations. State v. Plummer (1986), 22 Ohio St.3d 292. Absent a showing of prejudice to the defendant, the results of an alcohol test administered in compliance with the Ohio Administrative Code are admissible as evidence in a driving under the influence case. Elyria v. Conley (1994), 99 Ohio App.3d 40.
At least two other courts of appeals have addressed problems with batch 96901 in a motion to suppress. In State v. Monsour (Dec. 5, 1997), Portage App. No. CA96-P-0274, unreported, the Eleventh Appellate District affirmed a trial court's ruling to deny a motion to suppress. The court determined that
 It has been held that to substantially comply with OAC 3701-53-04, the state need only show the solution was approved by the Director of Health and the test was conducted in accordance with the standard procedures provided in the Ohio Admin. Code. * * * Here the state presented a self-authenticating certificate from the Director of Health certifying the test solution and its anticipated target result. This was sufficient to show, in light of appellant's other stipulations, at least substantial compliance, if not strict compliance, with the regulations. (Citations omitted.)
The Fourth Appellant District addressed the identical issue in State v. Koski (Feb. 28, 1997), Athens App. Nos. 96CA1757 and 95CA1758, unreported, and determined that the state substantially complied with the Ohio Administrative Code and the defendant failed to show prejudice.
However, we can distinguish Monsour and Koski from the instant case. We find no reference in Monsour and Koski to the independent testing done by the department of health which resulted in the different calibration value of .101 versus the .100 as stated by the certificate issued by the department of health. In the instant case, the trial court found that
 An examination of the test results conducted internally by the Ohio Department of Health and set forth in Defendant's exhibit E discloses that each of the samples tested came up within a standard deviation within the acceptable range. What is problematic, however, is that the grand mean of the samples is 101 percent of the target value of .121; thus, as the [appellee] argues, the acceptability of the range of the tests would be higher based on the internal tests than according to the certificate of approval. The facts of this case reflect that the calibration test performed prior to the defendant's test resulted in a reading of .095. The result of the * * * test was .101. Due to the low and acceptable rate of the prior calibration and the marginal test of the defendant over the presumptive level of intoxication, the court concludes, based upon the facts of this case, that the test results were unreliable and should be suppressed as a matter of law.
In a hearing on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. State v. Venham (1994), 96 Ohio App.3d 649. Accordingly, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Klein (1991), 73 Ohio App.3d 486,488. Accepting such facts as true, this court must independently determine, as a matter of law, whether the facts meet the requisite legal standard. Id.
A violation of R.C. 4511.19(A)(2-4) requires that the offender operated a vehicle within the state and was found to have specified concentrations of alcohol in the offender's blood, breath or urine. A detailed procedure is set forth in R.C.4511.19 and Ohio Adm. Code 3701-53 to ensure the accuracy of these tests. "It is well-established that in a charge of violating R.C.4511.19(A)(2) through (4) the accuracy of the test results is a critical issue in determining a defendant's guilt or innocence." State v. French (1995), 72 Ohio St.3d 446, 451, following Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3.
The trial court made the factual finding that because conflicting evidence was presented as to the target value of the calibration solution, Swingle's breathalyzer test results were unreliable. We recognize that there is a possibility that Swingle's breathalyzer test results were not accurate based on the testimony regarding the independent analysis and the conflicting stated values of the calibration solution. Accordingly, we find that the trial court properly granted Swingle's motion to suppress the breathalyzer test results in the R.C. 4511.19(A)(3) prosecution because of the possibility that the test results were not accurate. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF PLAINTIFF-APPELLANT, IN DENYING THE STATE'S MOTION REQUESTING USE OF A BREATH ALCOHOL TEST IN A 4511.19(A)(1) CHARGE.
The state argues that the trial court erred in suppressing the results of Swingle's breathalyzer test in the R.C. 4511.19(A)(1) prosecution. After the trial court upheld Swingle's motion to suppress, the state filed a motion for appropriate relief, requesting that it be permitted to use the test results in prosecuting the R.C. 4511.19(A)(1) charge. The trial court overruled this motion and a motion in limine filed by defense stating:
 Before the court at this time are the Plaintiff's motion for appropriate relief and the Defendant's offer of stipulation and motion in limine. Based on the arguments and the law cited by the respective movants, the court finds that neither of said motions is well taken and both are hereby overruled.
As stated, in a hearing on a motion to suppress, the trial court assumes the role of the trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Venham (1994), 96 Ohio App.3d 649. Accordingly, while we accept the trial court's findings of fact as true, we independently determine, as a matter of law, whether the facts meet the requisite legal standard. State v. Klein (1991), 73 Ohio App.3d 486, 488.
In a charge under R.C. 4511.19(A)(1), the chemical test result is not dispositive of guilt, but merely constitutes some evidence to consider, if probative, in addition to all other evidence regarding the conduct of the defendant. Id; see, also, Mason v. Murphy (Oct. 13, 1997), Warren App. No. CA97-02-016, unreported (finding that failure to comply with ODH regulations rendered the blood test results inadmissible as to a R.C. 4511.19(A)(2) charge, but the results would be admissible under a R.C.4511.19(A)(1) charge).
Furthermore, in Newark v. Lucas (1988), 40 Ohio St.3d 100, the Supreme Court held that evidence which was suppressed in a prosecution for (A)(3) was admissible in a prosecution for an (A)(1) charge. "The accuracy of the test is not the critical issue as it is in prosecutions for per se violations." Id. at 104.
Accordingly, we find that the trial court erred in applying the facts to the requisite legal standard. Even if we assume that the target value of the calibration solution should have been .101 instead of .100, Swingle's breathalzyer test result is still evidence of intoxication. The trier of fact should be allowed to consider and weigh the evidence of the results of the test in addition to other evidence and come to a conclusion as to whether Swingle violated R.C. 4511.19(A)(1).
Appellant's second assignment of error is well-taken and this issue is reversed and remanded. The trial court erred in not permitting the state to use Swingle's breathalyzer test results in the prosecution of the R.C. 4511.19(A)(1) charge.
Judgment affirmed in part, reversed in part and remanded for further proceedings.
YOUNG, P.J., concurs.
KOEHLER, J., concurs in part and dissents in part.