OPINION
Defendant-appellant, Andrea Jobe, appeals her conviction for driving under the influence of alcohol in violation of R.C. 4511.19(A)(3).[1] We affirm.
The facts underlying appellant's conviction are the following: Early in the morning on April 20, 1997, Ohio State Trooper Nelson Holden was on routine patrol driving eastbound in his cruiser on Old State Route 74 in Mt. Carmel, Clermont County, Ohio. At about 2:00 a.m., appellant, who was leaving the Stables Bar and Grill, pulled out onto Old S.R. 74 in front of Holden so that he "had to brake quickly in order to keep from hitting her." Holden pulled appellant over at 2:03 a.m. Upon speaking with appellant, Holden noticed a moderate odor of alcohol about her person. Appellant told Holden that she only had one beer.
Holden administered the pre-horizontal gaze nystagmus test to appellant while she was seated in her vehicle. Based on her failure to perform well on that test, Holden asked appellant to perform three additional field sobriety tests: the horizontal gaze nystagmus test (performed while a driver is standing outside of his or her car), the one-leg stand, and the finger-to-nose test. Appellant failed the horizontal gaze nystagmus test and the one-leg stand. She was able to touch her finger to her nose in three of four attempts. While testing appellant, Holden noticed that she smelled of alcohol, that her eyes were bloodshot and glassy, and that her speech was slurred. Holden concluded that appellant was under the influence of alcohol, arrested her, placed her in his patrol car, and transported her to the police station. At the station, appellant took a breathalyzer test on a BAC Datamaster. The test result showed that at 2:37 a.m. appellant had a breath alcohol concentration of 0.103 percent.
The case was tried to a jury. Following deliberations, the jury found appellant guilty of violating the (A)(3) subsection of R.C. 4511.19.
On appeal, appellant complains in a single assignment of error that the jury's verdict is against the manifest weight of the evidence. Appellant does not dispute that the printed result of her breathalyzer test was .103. Appellant argues, however, that at trial she successfully rebutted the accuracy of this measurement in two ways. Breath testing devices have a permissible variance even when they are properly calibrated. Appellant argues that if this variance is applied to her test result, it is possible to conclude that her breath alcohol concentration was below the legal limit. Specifically, appellant claims that if the acceptable calibrated operating variance of .005 grams per two hundred ten liters of breath, see Ohio Adm. Code 3701-53-04(A)(1), is subtracted from the .103 of her breath test, the result (.098) would fall within the legal range. In a second issue under this assignment of error, appellant argues that the trial testimony of her expert witness showed that appellant's blood-alcohol concentration had not peaked by 2:03 a.m., and was still below the legal limit when appellant was pulled over.
In order for a court of appeals to reverse a trial court's entry of judgment on a jury verdict on the basis that the verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact-finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,389. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given to the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
When prosecuting an alleged violation of R.C. 4511.19(A)(3), the state must prove two elements: (1) that the defendant was operating a vehicle within the state; and, (2) that at the time of the offense, the defendant had a prohibited alcohol concentration level. Newark v. Lucas (1988), 40 Ohio St.3d 100,103. It is undisputed that appellant was operating a vehicle at 2:03 a.m. on April 20, 1997. Therefore, the question before us is whether the jury properly concluded that she was doing so with a prohibited alcohol concentration level.
Appellant's conviction is based on the results of her breath test. Appellant does not argue that the test was performed improperly or in violation of any regulation. See R.C. 4511.19(B) (requiring that bodily substances be analyzed "in accordance with methods approved by the Director of Health by an individual possessing a valid permit issued by the director of health"). As a general rule, when a breath testing device is properly calibrated for accuracy, the reading from the device is "relevant, admissible, and sufficient to sustain a conviction when coupled with evidence of operation of a motor vehicle." State v. Schuck (1986), 22 Ohio St.3d 296, 297, quoting State v. Boyd (1985), 18 Ohio St.3d 30, syllabus. See, also, State v. Ault (Mar. 27, 1989), Warren App. No. CA88-08-069, unreported. Notwithstanding the fact that the breath test was performed in conformance with regulations, appellant argues, for the reasons stated above, that expert testimony presented on her behalf at trial requires a finding that her blood alcohol level was below .10 when she was pulled over. We do not agree.
At trial, appellant presented the testimony of Dr. Harry Plotnick, an attorney and forensic toxicologist. Plotnick testified that with a breath test result of .103, "you can't tell" whether an individual's blood alcohol concentration was above or below the legal limit of .100 grams of alcohol per two hundred ten liters of breath. Plotnick explained, first, that the breath test machine is calibrated with a "tolerance" of error of plus or minus .005. Thus, according to Plotnick, "when you get a .103, using the instruments in accordance with the calibrations * * * it's somewhere between .098 and .108, and you can't get any closer than that with the instrument because it hasn't been calibrated any closer than that."
Plotnick also testified that based on appellant's alleged body weight on April 20, 1997 (105 lbs.), assuming appellant drank two to three bottles of beer between midnight and 2:00 a.m., and that appellant stopped drinking about 2:00 a.m., her breath alcohol level when she was pulled over at 2:03 a.m. would have been less than .10. Plotnick stated that "it takes 30 to 60 minutes to completely absorb an alcoholic beverage from a gastrointestinal tract." If an individual stopped drinking alcohol at 2:00 a.m., absorption of alcohol into the bloodstream would continue for the next one-half hour to one hour. And at 2:37 a.m., "blood alcohol concentration would still be going up * * *." Plotnick explained further:
 [I]f somebody stopped drinking at 2:00 a.m. and the offense occurred at 2:03 a.m. they only had three minutes of the 30 to 60 it takes to absorb it to get that blood alcohol concentration up. So, that if you assume that all those facts are correct, then the blood alcohol concentration was below .10 at the time of the stop but was above, or slightly above .10 or potentially, again you can't tell because of the tolerance of the instrument, but it was clearly higher at the time of the test, [sic] than at the time that the individual was stopped. (Emphasis added.)
On cross-examination, Plotnick admitted that in a scenario where the individual stopped drinking at midnight, the alcohol concentration in that person's blood would be decreasing by 2:00 a.m. and so, using the facts of appellant's case as a model, the blood alcohol concentration at 2:03 a.m. would actually be higher than the blood alcohol concentration at 2:37 a.m. Dr. Plotnick also admitted that he had no information about several factors which might affect the rate of alcohol absorption, including appellant's "personal chemistry," her specific metabolism, whether she was taking medication that might effect the rate at which alcohol was being excreted by appellant, or whether she had an empty stomach when she was drinking. In short, Dr. Plotnick agreed that his testimony was "hypothetical."
Appellant testified at trial that she went to the Stables bar at about 11:30 p.m., drank one beer around midnight, one beer between midnight and 2:00 a.m., and part of a beer around 2:00 a.m. just before she left the bar. She also testified that she "had a little dinner for one of [her husband's] brothers and his friends" between 3:00 p.m. and 5:00 p.m. and that she didn't have anything to eat at the bar.
In its role as "the sole judge of the weight of the evidence and the credibility of witnesses," McKay Machine Co. v. Rodman (1967), 11 Ohio St.2d 77, 82, a jury may accept all, part, or none of the testimony offered by any witness, including an expert witness. In re Estate of Nibert (Sept. 30, 1988), Madison App. No. CA88-02-004, unreported. Here, it appears that the jury chose to give less weight to Dr. Plotnick's expert testimony than appellant would have liked. See State v. Holloway (Mar. 29, 1985), Lucas App. No. L-84-025, unreported, at 12. This result does not strike this court as exceptional. Dr. Plotnick made no claim that his testimony is irrefutable. At trial, Dr. Plotnick admitted that his conclusions were merely hypothetical and were dependent on specific facts that were provided to him by appellant's attorney. These include: appellant's weight, how much she had to drink, when she took her last drink. Plotnick also testified that he had not considered other variables that might affect his conclusions, such as appellant's medical history, whether she was on any medication, whether she was fatigued on the night she was arrested, what her metabolic rate was, or if she had eaten.
In addition, appellant's own credibility was before the jury. We note in this regard that her statements concerning how much she had to drink were not consistent. She initially told Trooper Holden that she had one beer, later she admitted to drinking two and, then, two and one-half beers. As for the issue concerning the .005 tolerance, based on Dr. Plotnick's testimony the jury could have concluded that appellant's blood alcohol concentration was marginally greater than .103, e.g., closer to .108, as easily as it could have concluded that it was marginally less than .103. Further, to accept appellant's argument, one would have to assume that when appellant was tested the BAC Datamaster was operating within the .005 range of tolerance and that it did not provide an "exact" reading of her blood alcohol content. There was no evidence at trial that such a variance actually occurred.
In summary, we find that the jury was well-within its province in assessing the weight and credibility of the testimony presented at trial. This court will not substitute its judgment for that of the jury where there is no indication that the jury "lost its way" or that the evidence weighs heavily against appellant's conviction. See Thompkins. Accordingly, the assignment of error is overruled. Judgment affirmed.
YOUNG, P.J., concurs.
KOEHLER, J., dissents.
[1] R.C. 4511.19(A)(3) prohibits operating a vehicle if a "person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath * * *."