OPINION
{¶ 1} Defendant-appellant David Ross appeals from his conviction for driving with more than the proscribed amount of alcohol, as measured by a blood test. Ross pled no contest to the charge after the trial court denied his motion to suppress evidence obtained following a motorcycle accident.
 {¶ 2} Ross contends that his conviction should be reversed because the trial *Page 3 
court erred in finding evidence of a breath test admissible, while simultaneously concluding that the prosecution had failed to prove the breath test was administered within two hours of the accident. Ross also contends that his arrest violated the Fourth Amendment to the United States Constitution because the arresting officer lacked probable cause for the arrest.
 {¶ 3} We conclude that the trial court erred in overruling the motion to suppress the results of the breath test, because the State failed to establish that the test was administered within two hours of the time of the alleged violation. We further conclude that the police had probable cause for the arrest, because the officers had sufficient information to cause a prudent person to believe that Ross was driving under the influence of alcohol. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 4} On June 1, 2006, Melvin Snyder observed lights on a motorcycle in a ditch. The time was between midnight and one a.m. Snyder stopped to help the motorcyclist (later identified as David Ross), who was sitting up with one foot under the motorcycle. After Snyder and Ross pushed the motorcycle out of the ditch, Snyder gave Ross a ride to the road where Ross lived, which was two or three minutes away from the accident scene. Snyder indicated that the accident must have happened within minutes of his arrival, because the road was pretty busy and someone would have been bound to notice the motorcycle. Snyder did not smell any *Page 4 
alcohol on Ross, but he did believe that Ross needed medical attention.
 {¶ 5} Between 1:30 a.m. and 2:00 a.m., Greene County Sheriff Deputy John Martin was southbound on U.S. 42 and saw a motorcycle off the roadway in a ditch. Martin ran the registration and learned that the motorcycle was registered to Ross. Martin went to Ross's home and spoke with Ross's wife, who denied that Ross was there. Ross's wife also said she did not know where the motorcycle was. As a result, Martin left and began looking around to see if he could find someone out walking who may have stolen the motorcycle. However, around two or three minutes after Martin left, his dispatcher told him to call a gentleman (Snyder) who had picked up an individual involved in a motorcycle accident. After speaking with Snyder, Martin returned to the Ross home and told Mrs. Ross that the motorcycle had been involved in an accident and that he believed her husband was at home. Martin also told Mrs. Ross the police had information that Ross had been injured in the wreck.
 {¶ 6} After Mrs. Ross acknowledged that her husband was home, Martin went into a bedroom, where Ross was lying in bed. Martin stated that he did not know whether Ross had been sleeping. Martin made the following observations: Ross was in shorts and a t-shirt that were torn, consistent with Ross having been in an accident. There was blood on Ross's shirt and the bed sheets, and he had injuries to his face. Ross's face was quite swollen. Martin also noticed a strong odor of an alcoholic beverage and that Ross's eyes were red and bloodshot. One eye may have been bloodshot from an injury, and it was possible that Ross had a concussion. Ross's head was still bleeding when Martin encountered him. The *Page 5 
bleeding had somewhat stopped, but there was a lot of dried blood.
 {¶ 7} Martin called paramedics, but Ross refused treatment after they arrived. Martin then asked Ross if he would accompany him to the scene of the accident, and Ross agreed to do so. Martin took Ross to the scene and turned him over to the Ohio State Highway Patrol, which had been dispatched to the scene around 2:20 a.m.
 {¶ 8} Sergeant Landacre was the first Ohio State Highway Patrol officer to arrive at the scene. When Landacre arrived, she observed a gentleman (later identified as Ed Myers) trying to move the motorcycle. Landacre learned that Myers was Ross's friend, and had been asked to pick up the motorcycle. According to Myers, Ross had said that a deer ran out in front of him, causing him to wreck the motorcycle.
 {¶ 9} Trooper Ryan Born of the State Highway Patrol also arrived at the scene and helped with the investigation. Born is the primary officer who talked with Ross, but Landacre also heard their conversation.
 {¶ 10} Born testified that he observed a strong odor of alcohol coming from Ross, who confirmed that he had been operating the motorcycle. Ross said that he had stopped at Cadillac Jack's after work, had consumed chicken wings and a couple of beers, and had then driven home. Ross indicated that a deer ran out in front of him.
 {¶ 11} Sergeant Landacre tried to talk Ross into going to the hospital because the left side of his face was covered with "road rash" and was swollen, but Ross *Page 6 
refused to go. Landacre indicated that Ross's face was flushed, his speech was slurred, and he had a strong odor of alcohol. Landacre conceded that Ross could have had a concussion, but said he appeared intoxicated.
 {¶ 12} Born asked Ross to perform sobriety tests. Born concluded that Ross could not perform the horizontal gaze nystagmus test because his left eye was so swollen. In addition, Ross said he had previous leg injuries that would prevent him from walking a straight line. Ross was given the option of performing the one-leg stand test, and said he felt he could do that. Born explained the directions for the test and Ross said he understood. After Ross performed the test, Born found three clues of intoxication, which indicated impairment. As a result, Born placed Ross under arrest, read Ross his Miranda rights, and placed him in the back of the patrol car. Born took Ross back to the Ohio State Highway Patrol Post and performed the chemical tests at 3:36 a.m. The BAC result was .144.
 {¶ 13} Ross was subsequently charged with being under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), with having a prohibited blood alcohol concentration of 0.144, in violation of R.C.4511.19(A)(1)(d), and with failure to maintain reasonable control, in violation of R.C. 4511.202. In July 2006, Ross filed a motion to suppress the results of the breath test and any incriminating statements. The trial court held a hearing in September, 2006, at which the State presented testimony from Officer Martin, Sergeant Landacre, Trooper Born, and Melvin Snyder. Following the hearing, the trial court issued a decision overruling the motion to suppress. The court found that the breath test was not shown to have been *Page 7 
administered within the two-hour time frame required by R.C.4511.19(D)(1)(b). However, the court concluded that the test result could be admitted for whatever probative value it had. The court also found that the police had reasonable suspicion to detain Ross and probable cause for the arrest.
 {¶ 14} Ross subsequently pled no contest to a violation of R.C.4511.19(A)(1)(d), and the court found him guilty of that charge. The court imposed a $500 fine, plus costs, and 93 days in jail, with 90 days suspended on condition that Ross have no further violations for six years. The court dismissed the failure to control charge and apparently also intended to dismiss the charge of driving under the influence of alcohol. However, the court entries contain clerical errors that need to be corrected.[1]
 {¶ 15} Ross appeals from his conviction and sentence. *Page 8 
 I1 {¶ 16} Ross's First Assignment of Error is as follows:
 {¶ 17} "THE CONVICTION SHOULD BE REVERSED BECAUSE EVEN THOUGH THE TRIAL COURT HELD THAT THE PROSECUTION FAILED TO PROVE THAT THE BREATH TEST WAS ADMINISTERED WITHIN TWO HOURS OF THE EVENT, THE COURT NONETHELESS HELD THE EVIDENCE ADMISSIBLE."
 {¶ 18} Under this assignment of error, Ross contends that the trial court should have sustained the motion to suppress with respect to the violation of R.C. 4511.19(A)(1)(d), because the court found that the breath test was not administered within the two-hour time limit then imposed by R.C. 4511.19(D)(1).[2] Ross notes that under Newark v.Lucas (1988), 40 Ohio St. 3d 100, 532 N.E. 2d 130, breath test results are inadmissible when a person is charged with driving with a proscribed amount of alcohol in his or her system, unless the test has been conducted within two hours of an alleged violation.
 {¶ 19} In Lucas, the Ohio Supreme Court noted that a "per se" violation is committed where the amount of alcohol in an individual's bodily substances exceeds the proscribed statutory amount. Id. at 103. The court stressed that accuracy is critical and that allowing admission of chemical analyses of substances withdrawn after the two-hour limit would cause "confusing, unreliable, and inconsistent verdicts." *Page 9 
Id. at 104. Accordingly, the court held that in such situations, the results may be admitted in evidence "only if the bodily substance is withdrawn within two hours of the time of the alleged violation." Id.
 {¶ 20} The Ohio Supreme Court also held, however, that results of properly administered bodily substances tests may be admitted where a defendant is charged with driving under the influence of alcohol. Id. at 105. This holding is based on the fact that for purposes of driving under the influence, a defendant's behavior is the crucial issue and the amount of alcohol is of secondary interest. Id. at 104.
 {¶ 21} In view of the holding in Lucas, Ross contends that the trial court should have granted the motion to suppress with regard to the "per se" charge under R.C. 4511.19(A)(1)(d). Citing State v. Anderson (Mar. 31, 2000), Ottawa App. No. OT-99-059, 2000 WL 331382, *2, Ross also contends that his conviction for having a prohibited blood alcohol concentration should be reversed because the evidence was insufficient to prove a "per se" violation.
 {¶ 22} The facts in Anderson are similar to those in the present case. After a motion to suppress was denied, the defendant inAnderson pled no contest to a charge of a prohibited blood alcohol concentration, and a charge of driving under the influence was dismissed. 2000 WL 331382, at *2. Subsequently, the Sixth District Court of Appeals concluded that the State had failed to establish that the breath alcohol test was administered within two hours of the time that the defendant operated a vehicle. The Sixth District further concluded that the trial court erred in denying the defendant's motion to suppress. Accordingly, the Sixth District reversed *Page 10 
the conviction. Id. at *3.
 {¶ 23} The Eleventh District Court of Appeals reached the same conclusions in State v. Dandalides (Dec. 6, 1991), Geauga App. No. 90-6-1596, 1991 WL 260162, *4. In that case, the court of appeals reversed the defendant's conviction for having a prohibited alcohol concentration. The court of appeals concluded that the trial court erred in failing to grant the defendant's motion to suppress, because the prosecution had failed to prove that the chemical test was administered within two hours of the defendant's operation of a vehicle.
 {¶ 24} The standards for reviewing decisions on motions to suppress are well established. In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." State v. Retherford (1994), 93 Ohio App.3d 586, 592,639 N.E.2d 498 (citation omitted). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.
 {¶ 25} Notably, the State does not dispute the facts and legal principles cited by Ross. The State does argue, however, that Ross entered into a negotiated plea to driving with a proscribed amount of alcohol and could as easily have negotiated a plea to driving under the influence. The State, therefore, contends that Ross should be barred from contesting the trial court's decision. We disagree. *Page 11 
 {¶ 26} As a preliminary point, we note that the State elected to proceed on the violation of driving with a proscribed amount of alcohol. The State could have chosen to proceed with a charge of driving under the influence of alcohol, since the test results would have been admissible in that context, if presented with expert testimony.Lucas, 40 Ohio St.3d at paragraph two of the syllabus. However, the State elected to have this charge dismissed and to proceed with the alternate charge. Because Lucas was decided in 1988, the State would have been aware of the legal ramifications of its choice.
 {¶ 27} Furthermore, no such bar was applied in Anderson andDandalides, even though the defendants in those cases had pled no contest to the per se violation, and the State had dismissed charges of driving under the influence of alcohol. Anderson, 2000 WL 331382, at *2, and Dandalides, 1991 WL 260162, *2.
 {¶ 28} More importantly, the Ohio Supreme Court has specifically held that defendants do not waive appeal of adverse rulings on motions to suppress by pleading no contest to per se violations of R.C. 4511.19(A).City of Defiance v. Kretz (1991), 60 St.3d 1, 5, 573 N.E.2d 32. In fact, the Ohio Supreme Court has stressed that defendants must raise these matters through motions to suppress or their arguments are waived.State v. Edwards, 107 Ohio St.3d 169, 173, 2005-Ohio-6180,837 N.E.2d 752, at ¶ 12-13. Consequently, there is nothing unusual about the fact that a defendant would plead no contest and then appeal and assign as error the decision that led to the plea.
 {¶ 29} Under R.C. 2937.07: *Page 12 
 {¶ 30} "A plea to a misdemeanor offense of `no contest' or words of similar import shall constitute a stipulation that the judge or magistrate may make a finding of guilty or not guilty from the explanation of the circumstances of the offense. If a finding of guilty is made, the judge or magistrate shall impose the sentence or continue the case for sentencing accordingly. A plea of `no contest' or words of similar import shall not be construed as an admission of any fact at issue in the criminal charge in any subsequent civil or criminal action or proceeding."
 {¶ 31} Regarding the offense in question, R.C. 4511.19(A)(1)(d) provides that:
 {¶ 32} "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 {¶ 33} "* * *
 {¶ 34} "The person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath."
 {¶ 35} There would have been no explanation of the circumstances of this offense that could support a finding of guilt, since the test was not conducted in accordance with statutory requirements and the results were inadmissible to establish a violation of R.C. 4511.19(A)(1)(d). Accordingly, the trial court erred in finding Ross guilty of the offense.
 {¶ 36} Ross's First Assignment of Error is sustained.
 III *Page 13 {¶ 37} Ross's Second Assignment of Error is as follows:
 {¶ 38} "THE ARREST IN THIS CASE VIOLATED THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION BECAUSE THE OFFICER MADE THE ARREST WITHOUT PROBABLE CAUSE."
 {¶ 39} Under this assignment of error, Ross contends that the police lacked probable cause for the arrest. According to Ross, the arrest was based on information that might have led an officer to suspect that Ross was intoxicated, but mere suspicion was not enough. Ross also claims that the arresting officer failed to consider reasonable explanations, such as a head injury, for Ross's slurred speech and failure to perform well on the sobriety test.
 {¶ 40} "Whether there is probable cause to arrest depends upon whether an officer has sufficient information to cause a prudent person to believe that the suspect was driving under the influence." State v.Schmitt, 101 Ohio St.3d 79, 81-82, 2004-Ohio-37, 801 N.E.2d 446, at ¶ 8. After reviewing the record, we conclude that the police officers had sufficient evidence to cause a prudent person to believe that Ross was driving while intoxicated. The record does contain conflicting evidence, like Ross's head injuries and the fact that the individual who gave Ross a ride home failed to smell any alcohol. However, both State Highway Patrol officers smelled alcohol on Ross's person, and both commented on other physical indicia indicating that Ross was under the influence of alcohol, such as bloodshot eyes, slurred speech, and unsteadiness on his feet. Prior to being arrested, Ross also stated that he had been drinking before the crash and had operated the motorcycle. *Page 14 
Finally, both officers were aware of Ross's possible head injury, but felt his behavior was consistent with impairment due to intoxication. In view of these facts, the police had probable cause for the arrest.
 {¶ 41} Ross's Second Assignment of Error is overruled.
 IV {¶ 42} After reviewing this matter, we entered an order asking the parties to file supplemental briefs addressing what the appropriate remedy should be in the event of our finding that the trial court's alleged error is not harmless. Specifically, the parties were to address whether the proper remedy would be a reversal and order of discharge or a reversal and remand for further proceedings.
 {¶ 43} Ross filed a supplemental brief; the State did not. Ross argues that under prevailing authority, pretrial challenges to breathalyzer tests destroy the State's case, and the State has the right to appeal under R.C. 2945.67 and Crim. R. 12(J). Additionally, Ross contends that the State may not voluntarily resurrect counts it dismisses pursuant to a plea agreement, because when the State voluntarily dismisses a case, the case is terminated and may not be re-filed or reinstated. For this latter proposition, Ross relies on the First District Court of Appeals' decision in State ex rel. Flynt v. Dinkelacker, 156 Ohio App.3d 595,598, 2004-Ohio-1695, 807 N.E.2d 967.
 {¶ 44} In Flynt, the court of appeals held that a trial court lacked jurisdiction to reinstate a fifteen-count indictment when the State had voluntarily dismissed the *Page 15 
indictment pursuant to a plea bargain. The State claimed that the dismissal was merely "conditional," and it should be allowed to proceed after the defendants allegedly breached the conditions. However, the First District rejected that reasoning, finding that cases cannot be conditionally dismissed under Crim. R. 48(A). The First District concluded that the idea of a conditional dismissal "would allow a prosecutor to keep a defendant perpetually indicted, without any idea concerning, or control over, when the matter would be resolved."2004-Ohio-1695, at ¶ 15.
 {¶ 45} If this were the last word on the subject, Ross might be entitled to a discharge. However, the Ohio Supreme subsequently distinguished Flynt, and refused to grant a writ of prohibition, in a situation that is almost identical to the present. See State ex rel.Douglas v. Burlew, 106 Ohio St.3d 180, 180-181, 2005-Ohio-4382,833 N.E.2d 293.
 {¶ 46} As in the present case, the defendant in Burlew was charged with both a violation of the prohibited blood alcohol concentration and driving under the influence of alcohol (DUI). 2005-Ohio-4382, at ¶ 2. After the trial court denied the defendant's motion to suppress, the defendant entered into a plea agreement. The defendant pled no contest to the blood alcohol violation and the DUI charge was dismissed. Id.
 {¶ 47} The defendant appealed, contending that the trial court erred in failing to grant her motion to suppress the breath test results. The First District Court of Appeals agreed, reversed the judgment, and remanded the cause for further *Page 16 
proceedings. Id. at ¶ 5. Subsequently, the trial court granted the State's motion to set aside the dismissal of the DUI charge. The defendant then filed a petition for writ of prohibition, asking that the trial court be forbidden to proceed with trial on that charge. Although the First District granted the writ of prohibition, the Ohio Supreme Court reversed, finding that the trial court did not patently and unambiguously lack jurisdiction to try the case. Id. at ¶ 10.
 {¶ 48} In this regard, the Ohio Supreme Court stated that:
 {¶ 49} "`Upon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred.'State ex rel. Stevenson v. Murray (1982), 69 Ohio St.2d 112, 113, 23 O.O.3d 160, 431 N.E.2d 324. This rule has been applied to criminal cases. * * *
 {¶ 50} "As Judge Burlew notes, the error occurred when he denied Douglas's motion to suppress her breath-alcohol-test results, which occurred before Douglas entered a plea of no contest to one DUI charge in return for the state's dismissal of the remaining DUI charge in the criminal case. Therefore, setting aside the dismissal of Count B is arguably supported by Stevenson and comparable cases.
 {¶ 51} "Moreover, the sole case relied upon by Douglas is distinguishable from this case. In State ex rel. Flynt v.Dinkelacker, 156 Ohio App.3d 595, 2004-Ohio-1695, 807 N.E.2d 967, the court of appeals held that a trial court judge patently and unambiguously lacked jurisdiction to reinstate a 15-count indictment when the indictment had been voluntarily dismissed by the state pursuant to a plea agreement. In Flynt, the court emphasized that permitting `[a] conditional dismissal in a criminal *Page 17 
matter would allow a prosecutor to keep a defendant perpetually indicted, without any idea concerning, or control over, when the matter would be resolved.' Id. at ¶ 15 * * * . By contrast, this case does not involve any perpetual condition. Furthermore, Flynt involved the dismissal of an entire indictment against the named relators, whereas this case involves the dismissal of one of two counts in the case against Douglas. * * * And as the court in Flynt noted, `When a criminal case is dismissed, it is over — except in the case where the dismissal is appealed.' * * * Here, unlike in Flynt, a part of the criminal case was appealed.
 {¶ 52} "Similarly, we have held that a writ of prohibition will prevent the exercise of jurisdiction when an entire case has been dismissed. * * *
 {¶ 53} "Finally, we have held that comparable claims of breached plea agreements or double jeopardy are remediable by appeal rather than by extraordinary writ. * * *
 {¶ 54} "Based on the foregoing, Judge Burlew does not patently and unambiguously lack jurisdiction to set aside the dismissal of the DUI charge and proceed upon the charge. We need not expressly decide Douglas's claims that Judge Burlew lacks jurisdiction, because our review is restricted to whether Judge Burlew patently and unambiguously lacks jurisdiction. * * * Because Douglas has an adequate remedy by appeal to raise her claims, she is not entitled to the requested extraordinary relief in prohibition." 2005-Ohio-4382, at ¶ 11-16
(citations omitted).
 {¶ 55} In view of the above discussion, the proper remedy in the present case is to reverse the judgment of the trial court, and remand this cause for further *Page 18 
proceedings. We express no opinion on the merits of any proceedings that might follow, except to note that a writ of prohibition would not be appropriate if the State chooses to proceed on the dismissed charge. Furthermore, any remedy would be by way of appeal after final disposition.
 V {¶ 56} Ross's First Assignment of Error having been sustained, and his Second Assignment of Error having been overruled, the judgment of the trial court is Reversed, and this cause is remanded for further proceedings consistent with this opinion.
BROGAN and GRADY, JJ., concur.
[1] A pre-trial statement filed on November 29, 2006, indicates that Ross would plead to a violation of R.C. 4511.19(A)(1)(d) and that the other charges would be dismissed. Consistent with this document, the court handwrote on an entry that Ross had pled no contest to the violation of R.C. 4511.19(A)(1)(d) and that he was found guilty. The court also handwrote the terms of the sentence. The document on which this was written, however, was the criminal docket entry for a violation of "4511.19A1 * * * OVI — 1ST OFFENSE WITHIN SIX YEARS." Under the box designated court action, "N.G." is checked. To the side, the court made its handwritten notation regarding the no contest plea to R.C.4511.19(A)(1)(d), the guilty finding on that charge, and the sentence.
The next docket entry refers to a violation of "4511.19A1D * * * OVI .08 BUT .17 BREATH — 1ST OFFENSE WITHIN SIX YEARS." Under court action, "N.G." and "Dismissed" are checked. The third criminal docket entry refers to a violation of "4511.202 * * * REASONABLE CONTROL." Under court action, "N.G." and "Dismissed" are checked.
The parties do not dispute that the intended disposition was for Ross to plead no contest to a violation of R.C. 4511.19(A)(1)(d) and for the remaining charges to be dismissed. Because the trial court made clerical mistakes that do not reflect the intended disposition, the error needs to be corrected.
[2] Effective August 17, 2006, the time limit was increased to three hours. *Page 1