This is an appeal from the judgment of conviction and sentence of the Ross County Court of Common Pleas. Defendant-Appellant Stewart Williamson appeals his conviction for aggravated vehicular assault, in violation of R.C. 2903.08, a fourth-degree felony. We affirm.
 STATEMENT OF THE CASE
On the evening of November 7, 1996, the appellant was driving his van westward on Western Avenue in Chillicothe, Ohio, when he struck Robert Queen, who was walking along the side of the road. Mr. Queen sustained fractures to both of his legs, a fractured hip, and a concussion as a result of this accident. Appellant claims that he did not see Mr. Queen because it was getting dark and raining heavily at the time of the accident. Appellant drove to a Shell gas station near the scene of the accident and initially told an attendant that he had struck a deer. Teresa Dameron, who was appellant's passenger, and Joanne Roush, who witnessed the accident, both said that the appellant had struck a person, so the attendant called for an ambulance.
Trooper C.J. Neal of the Ohio State Highway Patrol investigated the accident. When Trooper Neal arrived at the accident scene, EMTs were preparing to take Mr. Queen to the hospital. Trooper Neal then went to the Shell station to locate the driver who had struck Mr. Queen. When Trooper Neal found the appellant, he noticed a strong odor of alcohol on the appellant's breath. After the appellant performed poorly on several field sobriety tests, Trooper Neal arrested him for driving while intoxicated and took him to the Ross County Law Enforcement Complex in Chillicothe. At the Law Enforcement Complex, the appellant provided a urine sample and was released to a friend without being formally charged.
On October 24, 1997, the Ross County Grand Jury indicted the appellant on one count of aggravated vehicular assault, in violation of R.C. 2903.08, a fourth-degree felony. The appellant was served with the indictment on November 5, 1997. On June 3, 1998, appellant filed a motion to dismiss, arguing that the indictment violated his statutory right to a speedy trial. The trial court held a hearing on July 17, 1998, and on September 21, 1998, the court overruled the motion to dismiss. The case was tried to a jury beginning on October 29, 1998, and on October 30, 1998, the jury returned a guilty verdict. On December 11, 1998, the trial court sentenced the appellant to twelve months in prison but stayed execution of the sentence pending appeal. Appellant filed a timely notice of appeal and presents four assignments of error for our review.
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED DEFENDANT'S MOTION TO DISMISS THE INDICTMENT.
 SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY TO PRESUME THAT THE DEFENDANT WAS UNDER THE INFLUENCE OF ALCOHOL BASED UPON CHEMICAL TESTS ADMITTED INTO EVIDENCE AT TRIAL, THEREBY DENYING THE APPELLANT DUE PROCESS OF LAW.
 THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE APPELLANT'S URINE TEST RESULTS.
 FOURTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO INCLUDE AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF NEGLIGENT ASSAULT.
 OPINION I.
In his First Assignment of Error, appellant claims that the trial court erred when it denied his motion to dismiss the indictment based on a violation of his statutory right to a speedy trial. It is important to note at the outset that there is a distinction between statutory and constitutional speedy trial rights. The Sixth Amendment to the United States Constitution provides a criminal defendant with the right to a speedy trial, but this right does not apply unless the defendant has been formally charged with a crime, is held pending the filing of charges, or is released on bail or recognizance. United States v.Lovasco (1977), 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752. Even after the state brings formal charges, the Sixth Amendment only acts to prohibit unreasonable delays in bringing the case to trial. The reasonableness of a delay must be determined on a case-by-case basis. See Barker v. Wingo (1972), 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101. Ohio statutory law, on the other hand, imposes a clear time limit for bringing an accused to trial. Under R.C. 2945.71(C)(2), a criminal defendant who is charged with a felony must be "brought to trial within two hundred seventy days after his arrest." Absent a waiver by the defendant, the trial court must dismiss the case if the state does not bring the accused to trial within the time period established by R.C. 2945.71.
Appellant argues that the state violated his statutory right to a speedy trial because he was arrested the night of the accident, November 7, 1996, but the indictment against him was not issued until October 24, 1997. In addition, appellant was not served with the indictment until November 5, 1997, almost a full year after the accident. Obviously, if the appellant was arrested for purposes of R.C. 2945.71 on November 7, 1996, then the indictment was issued well after the expiration of the statutory time period for a speedy trial. However, appellee argues that the appellant was arrested for purposes of R.C. 2945.71 when he was served with the indictment, rather than on the day of the accident. The issue on this assignment of error is whether the term "arrest," as it is used in R.C. 2945.71, requires that the defendant be formally charged with a crime.
The Supreme Court of Ohio has held that an arrest requires four elements: "(1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." State v. Barker (1978), 53 Ohio St.2d 135,372 N.E.2d 1324, paragraph one of the syllabus, certiorari denied439 U.S. 913, 58 L.Ed.2d 260, 99 S.Ct. 285. In Barker, however, the issue was whether the police had interrogated the defendant while he was under arrest without giving him his Miranda rights. In the context of statutory speedy trial rights, we have stated that "an arrest occurs on the date of the `formal arrest upon the indictment,' which is the date the state serves the accused with the indictment or the warrant." State v. McKinney (July 17, 1998), Ross App. No. 97CA2345, unreported, citing State v. Todd
(Feb. 29, 1996), Ross App. No. 95CA2125, unreported.
Appellant relies on State v. Brown (Apr. 17, 1985), Hamilton App. No. C-840445, unreported, in support of his argument that the indictment against him violated R.C. 2945.71. In Brown,
Edward Fingerhut and Raymond Brown attempted to sell a case of whiskey at the American Legion in Reading, Ohio, on February 17, 1983. Suspecting that the whiskey was stolen, Reading police officers detained Brown for approximately ninety minutes. Although officers seized several cases of whiskey from Brown's car and home, they released Brown without charging him. However, on September 1, 1983, the Hamilton County Grand Jury indicted both Brown and Fingerhut on charges of receiving stolen property. Neither Brown nor Fingerhut had been brought to trial by February 1984, and both defendants filed motions to dismiss for lack of a speedy trial under R.C. 2945.71(C). The trial court found that both defendants had been arrested on February 17, 1983, for purposes of R.C. 2945.71 and dismissed both indictments.
The Court of Appeals for Hamilton County affirmed the trial court as to Brown but reversed as to Fingerhut. During the first encounter on February 17, 1983, the police compelled Brown to go to the police station, and he was not free to leave until he was released after approximately ninety minutes. Fingerhut, on the other hand, went to the police station voluntarily and he was only there for a short time. Furthermore, the court emphasized that the Reading Police Department made an arrest card for Brown but not for Fingerhut. The court of appeals agreed with the trial court that Brown had been arrested on February 17, 1983, but found that Fingerhut had not been arrested until he was served with the indictment on September 9, 1983.
We decline to follow Brown because we find that our decision inMcKinney, supra, is more consistent with the purposes of R.C.2945.71 in the case at bar. The Sixth Amendment right to a speedy trial serves to protect an accused from the restrictions on liberty, financial costs, embarrassment, and anxiety that accompany public accusation of a crime. United States v. Marion
(1971), 92 S.Ct. 455, 404 U.S. 307, 30 L.Ed.2d 468. While there are differences between the constitutional and statutory speedy-trial provisions, R.C. 2945.71 protects the same interests as theSixth Amendment. The Sixth Amendment speedy trial guarantee does not apply unless the accused has been formally charged, is held pending the filing of charges, or is released on bail or recognizance. Id.
In the instant case, we find that the appellant was not arrested for purposes of R.C. 2945.71 until he was served with the indictment on November 5, 1997. Although appellant was taken into custody and detained for a period of time following the accident, he was released to a friend without being charged, without the preparation of a booking card or being fingerprinted, and without posting bail or signing a recognizance. Under these circumstances, we find that appellant's arrest on the day of the accident did not trigger the R.C. 2945.71 time period.
Accordingly, appellant's First Assignment of Error is OVERRULED.
 II.
In his Second Assignment of Error, appellant contends that the trial court erred by instructing the jury that it could presume that the appellant was under the influence of alcohol based solely on the results of chemical tests. The tests revealed that appellant had a concentration of .267 grams of alcohol per one hundred milliliters of his urine, an amount sufficient to invoke the presumption of intoxication under R.C. 2903.08 (B). Appellant argues that appellee failed to establish that the urine sample was taken within two hours of the accident, which is a necessary foundation for admission of the test results. Therefore, the trial court should not have instructed the jury on the statutory presumption of intoxication.
At the outset, we note that there appears to be a paucity of case law specifically addressing the admissibility of chemical tests for purposes of the presumption of intoxication contained in R.C. 2903.08 (B). However, the Supreme Court of Ohio has addressed the foundational requirements for admission of chemical tests in prosecutions for operating a motor vehicle while under the influence of alcohol under R.C. 4511.19. We find R.C. 2903.08
(B) and 4511.19(A) to be sufficiently analogous to permit us to utilize the cases interpreting R.C. 4511.19(A) in our resolution of this assignment of error. Although there is some difference in the effect of chemical tests under each statute (a concentration of alcohol above the prescribed limit results in a per se
violation of R.C. 4511.19(A)(2), (3), or (4), while R.C. 2903.08
(B) merely creates a presumption of intoxication) both statutes use the same threshold limits of alcohol concentration. The accuracy of the chemical test is the critical issue under both R.C. 4511.19(A) and 2903.08 (B), so the same evidentiary standards should apply to each statute.
The presumption with which the appellant takes issue does not relate directly to the conviction, but rather to the punishment. In a prosecution for aggravated vehicular assault, the trier of fact must first determine whether the defendant committed the offense by recklessly causing serious physical injury to another while operating a motor vehicle. R.C. 2903.08 (A). If so, the trier of fact must then determine whether the defendant was under the influence of alcohol at the time of the offense. R.C. 2903.08
(B). If the defendant was under the influence of alcohol, then the trial court must permanently revoke the defendant's driver's license. Id. The statute further provides:
 When the trier of fact determines whether the offender was under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, the concentration of alcohol in the offender's blood, breath, or urine as shown by a chemical test taken pursuant to section 1547.111 or 4511.191 of the Revised Code may be considered as competent evidence and the offender shall be presumed to have been under the influence of alcohol if there was at the time the bodily substance was withdrawn for the chemical test a concentration of ten-hundredths of one per cent or more by weight of alcohol in the offender's blood, ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the offender's breath, or fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of the offender's urine.
In Newark v. Lucas (1988), 40 Ohio St.3d 100, 532 N.E.2d 130, the Supreme Court of Ohio held that chemical tests performed on a bodily substance withdrawn more than two hours after an alleged violation is inadmissible in a prosecution for a per se violation of R.C. 4511.19(A)(2), (3) or (4). Id. at paragraph one of the syllabus. A defendant who operates a motor vehicle with a proscribed concentration of alcohol in his blood, breath, or urine is guilty of a per se violation regardless of the effect that the alcohol has on his ability to drive. Id. at 103,532 N.E.2d at 133. Since the accuracy of the chemical test is the critical issue in a prosecution under R.C. 4511.19(A)(2), (3) or (4), the Lucas court required strict compliance with the two-hour time limit requirement.
In prosecutions under R.C. 4511.19(A)(1), on the other hand, the critical issue is whether alcohol actually impaired the defendant's ability to drive. Id. at 104, 532 N.E.2d 134. A concentration of alcohol in the defendant's body is some evidence of intoxication, but it does not satisfy the state's burden of proving that the defendant was under the influence. In such cases, the Lucas court held that chemical test results, properly supported by expert testimony, are admissible even if the bodily substance was withdrawn more than two hours after the alleged violation. Id. at paragraph two of the syllabus.
Appellant's argument is similar to the holding in Lucas.
Appellant concedes that the results of the chemical tests were admissible in the instant case as some evidence of intoxication. However, he argues that the presumption contained in R.C.2903.08(B) does not apply because the state failed to prove that the appellant's urine sample was taken within two hours of the accident.
In response, appellee argues that, under State v. French
(1995), 72 Ohio St.3d 446, 650 N.E.2d 887, any error regarding the admission of the test results is waived because appellant failed to make a pretrial motion to suppress the test results. The French court addressed the applicability of Crim.R. 12(B)(3) to a breathalyzer test allegedly administered in contravention of Department of Health regulations. Under Crim.R. 12(B)(3), any claim that evidence was obtained illegally must be asserted through a pre-trial motion to suppress, or the defendant waives any challenge to the evidence. The French court noted that the purpose of Crim.R. 12 (B) is to dispose of evidentiary issues before trial whenever possible and that this policy applies equally to constitutional and statutory challenges to the admissibility of evidence. The court held that "a defendant charged under R.C. 4511.19(A)(1) through (4) who does not challenge the admissibility of chemical test results through a pre-trial motion to suppress waives the requirement on the state to lay a foundation for the admissibility of the test results at trial." Id. at paragraph one of the syllabus.
Appellant attempts to distinguish French from the instant case by arguing that French addressed only the admissibility of chemical tests. According to the appellant, the weight to be given to the test results once admitted is another matter entirely. Appellant concedes that the results of the chemical tests of his urine sample are admissible as some evidence of intoxication. However, he argues that the presumption of intoxication under R.C. 2903.08(B) should not apply because appellee did not establish that the sample was taken within two hours of the accident.
The problem with appellant's argument is that it ignores the fact that the holding in French explicitly applies to all violations of R.C. 4511.19, including per se violations of divisions (2) through (4). The French court held that the defendant's failure to make a pre-trial motion to suppress relieves the prosecution of its burden of laying the usual foundation for admission of chemical test results. French, at paragraph one of the syllabus. This rule applies regardless of whether the chemical test is admitted as some evidence of intoxication under R.C. 4511.19(A)(1), or to prove a per se
violation of R.C. 4511.19(A)(2) through (4). Id.
Applying French to prosecutions under R.C. 2903.08, we find that a defendant's failure to make a pre-trial motion to suppress relieves the prosecution of its burden of laying a foundation for admission of those test results at trial. Furthermore, the test results are admissible not only as some evidence of intoxication, but also for purposes of establishing the presumption of intoxication under R.C. 2903.08 (B). In the instant case, appellant failed to make a pre-trial motion to suppress the chemical test results, so the trial court correctly held that he had waived the requirement that appellee prove that the urine sample was taken within two hours of the accident. In addition, the trial court properly instructed the jury on the presumption of intoxication under R.C. 2903.08 (B). Accordingly, appellant's Second Assignment of Error is OVERRULED.
 III.
In his Third Assignment of Error, appellant argues that the trial court erred in admitting the urinalysis test results when the state failed to present any expert testimony correlating the test results to the possibility that the appellant was impaired at the time of the accident. The state did not affirmatively establish that the urine sample was taken from the appellant within two hours of the accident as required by R.C. 4511.19. Appellant again concedes that the test results were admissible but argues that the state should have presented expert testimony explaining the correlation between the test results and the appellant's impairment.
When chemical test results are admitted as some evidence of intoxication, the state must present expert testimony correlating the test results with "the common understanding of what it is to be under the influence of alcohol." Newark v. Lucas,40 Ohio St.3d at 105, 532 N.E.2d at 130. In a prosecution for a per se
violation of R.C. 4511.19(A)(2) through (4), however, the effect that a given amount of alcohol would have on the defendant is immaterial, so long chemical tests prove that the defendant had a prohibited concentration of alcohol in his system. Id. at 103,532 N.E.2d at 133. Since the state need not prove that the effect of the alcohol in the defendant's system, there is no need for expert testimony correlating the test results with the common understanding of drunkenness.
As appellant argues, chemical test results are admissible only as some evidence of intoxication, and not to support a presumption of intoxication, if the state does not establish that the bodily substance used in the test was withdrawn within two hours of the alleged violation. Id. at paragraphs one and two of the syllabus. In addition, if a chemical test is admitted as some evidence of intoxication, Lucas established that the state must present expert testimony to explain the results of that test. However, as discussed under the Second Assignment of Error, a criminal defendant's failure to make a pre-trial motion to suppress chemical test results waives the requirement that the state lay a foundation for admission of those results. French,supra. Such a test is admissible not only as some evidence of intoxication, in which case expert testimony is required, but also to establish a per se violation of R.C. 4511.19(A)(2) through (4), or to support a presumption of intoxication under R.C. 2903.08(B), in which case no expert testimony is necessary.Id. Accordingly, appellant's Third Assignment of Error is OVERRULED.
 IV.
In his Fourth Assignment of Error, appellant argues that the trial court improperly refused to instruct the jury on the lesser-included offense of negligent assault. An offense can be a lesser included offense of another if:
 (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus. The parties focus their argument on the second prong of the Deem test.
The elements of aggravated vehicular assault under R.C. 2903.08
are (1) recklessly, (2) causing serious physical harm to another, (3) while operating a motor vehicle. The elements of negligent assault under R.C. 2903.14 are (1) negligently, (2) causing physical harm, (3) by means of a deadly weapon or dangerous ordinance. There is no dispute that recklessness necessarily includes negligence and that serious physical harm necessarily includes physical harm. The issue in this case is whether a motor vehicle constitutes a deadly weapon or dangerous ordinance for purposes of R.C. 2903.14.
The term "deadly weapon" is defined in R.C. 2923.11 as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." There is no question that an automobile is "capable of inflicting death." However, as appellee argues, an automobile is not "designed or specially adapted for use as a weapon." So, the issue of whether or not an automobile constitutes a deadly weapon depends on how the automobile is used. In other words, in order for an automobile to be a deadly weapon, it must be specifically "possessed, carried, or used as a weapon." This necessarily requires an intent to use the automobile as a weapon. Since a person must intend to use an automobile as a weapon in order for it to be considered a deadly weapon, an automobile is not a deadly weapon for purposes of R.C.2903.14, which merely requires negligent use of a deadly weapon or dangerous ordinance.
Under R.C. 2901.01(A)(3), the term "physical harm" encompasses "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Thus, were we to adopt appellant's reading of R.C. 2903.14, even the most minor of traffic accidents could result in the responsible party being held criminally liable for negligent assault if anyone was even slightly injured in the accident. We recognize that such an extreme scenario is unlikely. Nevertheless, if an automobile were considered a deadly weapon for purposes of R.C. 2903.14, the state could seek criminal charges against any driver whose negligence contributed to a traffic accident resulting in personal injury. We seriously doubt that the General Assembly intended such a result.
We hold that negligent assault, under R.C. 2903.14, is not a lesser-included offense of aggravated vehicular assault, under R.C. 2903.08, in a case such as the one at bar. See State v.Kelly (Apr. 1, 1992), Summit App. No. 15250, unreported. Appellant's Fourth Assignment of Error is OVERRULED. The judgment of the Ross County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall earlier terminate if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
Harsha, J.: Concurs in Judgment and Opinion, Abele, J.: Concurs in Judgment and Opinion as to Assignments of Error I and IV, Concurs in Judgment Only as to Assignments of Error II and III.
 _____________________ David T. Evans, Judge