Defendant-appellant William E. Walker, Jr. appeals his conviction and sentence entered by the Canton Municipal Court on one count of operating a motor vehicle under the influence of alcohol, in violation of R.C.4511.19(A)(1), following a jury trial. Appellant also appeals his convictions and sentences on one count of failure to control, in violation of R.C. 4511.202; and no seatbelt, in violation of R.C. 4513.263, following a bench trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On March 22, 2000, appellant was cited for driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1); driving under suspension, in violation of R.C. 4507.02(C); failure to control, in violation of R.C. 4511.202; and no seatbelt, in violation of R.C. 4513.263. At his arraignment on April 3, 2000, appellant entered pleas of not guilty to all the charges.
Appellant filed a Motion to Suppress and Motion to Dismiss on April 27, 2000. Relative to the suppression motion, appellant maintained his statements and the results of his blood alcohol test should be suppressed because the arresting officer lacked probable cause to cite/arrest appellant and because the blood alcohol test was not taken, handled, or tested in conformance with law and/or regulation. Motion to Suppress and Motion to Dismiss at 3. The trial court scheduled an evidentiary hearing on appellant's motion for May 22, 2000.
At the hearing, Trooper Eleazar Rivera of the Ohio State Highway Patrol testified he was dispatched to Navarre Road, west of Cambrinus Road in Canton Township, Stark County, Ohio, to investigate an automobile crash. Trooper Rivera arrived at the scene at 6:15 a.m. Upon his arrival, the trooper observed appellant on a gerney being placed into an ambulance to be transported to the hospital. Trooper Rivera entered the ambulance in order to question appellant. Upon his initial contact with appellant, Trooper Rivera noticed a strong odor of alcohol emanating from appellant's person. The trooper also noted appellant's speech was slurred and his eyes were bloodshot. The accident occurred when appellant's vehicle traveled across a parking lot, striking the rear of a parked tractor trailer. The impact of the crash caused the entire tractor trailer to move eighteen inches forward, and the rear of the trailer to move two feet to the left into a berm of railroad ties. Appellant informed Trooper Rivera he had been carjacked and forced into the backseat of his vehicle. Appellant further told the trooper the carjacker jumped out of the vehicle immediately prior to the collision.
After the emergency team transported appellant to the hospital, Trooper Rivera completed his investigation at the scene and proceeded to the hospital to further interview appellant. Again, appellant informed the trooper he had been carjacked. Initially, appellant told the trooper he was carjacked on Cleveland Avenue in front of the courthouse. Appellant stated he was sitting in his car when he observed an individual cross in front of him on the crosswalk. The individual came around the vehicle, stuck a gun in appellant's ear, and ordered appellant into the backseat. Thereafter, appellant changed his story, stating he was in his vehicle in the parking lot of the Pony Express when a man came up behind him and ordered him into the backseat. The crash occurred approximately ten minutes later. Appellant also gave inconsistent statements regarding the time frame during which the carjacking occurred. Appellant told Trooper Rivera he had consumed a couple of beers at the Pony Express earlier that evening, and four of five beers, which were in his car, after the crash. Trooper Rivera testified he did not find any beer containers in the immediate area of the crash. Trooper Rivera acknowledged he did not conduct any field sobriety tests upon appellant "just because the odor of alcohol was there and [appellant] was involved in this accident and I was outside the two hours." Transcript of Suppression Hearing at 21. The trooper noted appellant's blood sample was taken at approximately 8:10 a.m. Prior to taking the blood sample, the trooper read appellant the BMV Form 2255. Appellant indicated his consent to the test. Julie Hein, a lab technician at Aultman Hospital, drew the blood. Trooper Rivera had Hein sign a property control form and sent the sample to Columbus for testing. The results indicated a blood alcohol level of .108.
On cross-examination, Trooper Rivera admitted he did not observe appellant behind the wheel of his vehicle. The trooper also acknowledged there were no witnesses who saw appellant behind the wheel of his car. Trooper Rivera testified after Hein drew appellant's blood and signed the property control form, he packaged the sample and placed it in a mailbox outside the hospital. The second page of the property control form indicates the sample was received by the lab in Columbus at 10:57 a.m. on March 24, 2000. Later that day, at 1:00 p.m., an individual at the lab took possession of the sample. Trooper Rivera was unable to explain the lab's procedures for handling samples. Trooper Rivera indicated he did not see the crime lab results until sometime after he cited appellant. Trooper Rivera stated appellant's injuries were consistent with the crash, and noted appellant's belly would have significant bruising as a result of the impact. The trooper testified appellant's operation of the motor vehicle, the resulting crash, and the distinct odor of alcohol emanating from appellant's person provided him with probable cause to cite appellant.
Julie Hein, a details technician at Aultman Hospital, testified her only duty with respect to appellant was the drawing of his blood for a legal alcohol level. After drawing the sample, Hein labeled it and handed it to Trooper Rivera. On cross-examination, Hein testified Trooper Rivera gave an accurate recitation of the time at which appellant's blood sample was taken.
Upon the conclusion of Hein's testimony, the State rested. Appellant offered his exhibits into evidence, and the trial court admitted said exhibits without objection. Thereafter, appellant rested. The trial court found, under the totality of the circumstances, Trooper Rivera had reasonable and articulable suspicion appellant was driving the vehicle, and had probable cause to cite appellant because the trooper observed sufficient indicia of alcohol induced impairment. The trial court ruled the results of the blood test would not be admitted at trial without expert testimony because the blood sample was drawn outside the requisite two hour time period. The trial court further found there was sufficient testimony regarding the chain of custody of the blood sample to deny suppression of the results of the blood test on that basis.
The matter immediately proceeded to trial. At trial, Richard Cosgrove testified he owns a trucking dispatch business and the office is located above Perk's Tavern at Five Points. Cosgrove recalled he woke up around 4:30 a.m. on March 22, 2000, as he did every morning, and observed employees going to work at the Raff Road McDonalds. Shortly after returning to sleep, he heard a sound, which he described as different from the sounds he normally heard at that hour of the morning. Cosgrove arose at 6:00 a.m., looked out his window, and saw a car behind one of his flatbed trailers. Cosgrove thought somebody had just bumped into the trailer, but when he walked outside, he found the trailer had sustained substantial damage. Cosgrove explained the truck and trailer with approximately 100 gallons of fuel in the tank weighs 32,500 pounds. He estimated the vehicle which struck the trailer was traveling in excess of 50 mph as the entire truck and trailer had moved two to three feet forward, and the trailer had moved two to three feet sideways.
Gena Schank, the manager of the Raff Road McDonalds, testified she arrived at work at 4:15 a.m. on March 22, 2000. At approximately 4:30 a.m., Schank and her employees were in the back of the store, conducting an inventory, when they heard what Schank described as a "strange noise." Schank looked outside, but did not notice anything unusual. At approximately 6:00 a.m., a customer entered the establishment and advised the store employees of the accident. Schank proceeded to the accident cite and observed appellant laying on the ground outside the driver's door of the vehicle. Schank testified appellant appeared to be badly hurt and his mouth was bleeding. Schank asked appellant how he was doing, to which appellant responded he had been carjacked. Schank stated she smelled alcohol on appellant's person, and noticed the smell immediately.
Anthony Genara testified he was having coffee at the Raff Road McDonalds on the morning of March 22, 2000, when he observed Schank entered the establishment and instruct an employee to telephone for EMT's or paramedics because a man had been hurt in the parking lot. Because Genara had been an EMT in the army, he proceeded to the accident scene. He approached the vehicle and immediately recognized appellant, whom he had known for approximately nine years. Appellant told Genara he had been the victim of a carjacking. Genara stated he noticed the odor of alcohol emanating from appellant's person, but did not observe any alcohol containers in the area.
Paramedic Jonathen Smith testified he and Jim Haney were dispatched to the scene of the accident. At the scene, Smith observed a vehicle which had struck the back of a tractor trailer, and a male lying on the ground outside the driver's door. Appellant advised Smith he was having difficulty breathing, and chest and abdominal pain. Smith noticed a very strong odor of alcohol on appellant's person. Once in the squad truck, appellant stated he had been carjacked. Regarding his observations of the interior of appellant's vehicle, Smith noted appellant's injuries were consistent with somebody who had been driving the vehicle.
Paramedic Jim Haney testified his initial observation was that of a vehicle in the back of a trailer. Haney and Smith proceeded to the vehicle and found appellant on the ground outside the driver's door. Like Smith, Haney testified appellant's injuries were consistent with someone who had been driving the automobile. Haney testified he smelled alcohol on appellant's person during their initial contact. The paramedics asked appellant how much he had to drink, to which appellant responded he had stopped drinking around midnight.
James Ferguson, Chief Toxicologist and Director of Forensic Toxicology with the Franklin County Coroner's Office, determined appellant's blood alcohol level was .166 at the time of the accident. He based this determination on appellant's age, height, weight, and physical health as well as the blood alcohol results taken three and half hours after the accident. Ferguson opined appellant was under the influence alcohol at the time of the accident. With a blood alcohol level of .166, Ferguson stated appellant would experience a diminution of attention, loss of critical judgment, decreased motor control, impairment of memory and perception, and reduced visual acuity.
Prior to the commencement of the second day of trial, the trial court, outside the hearing of the jury, discussed the intended testimony of the State's final witnesses, David Billings, and Shirely Burris. Over appellant's objections, Billings and Burris were permitted to testify.
David Billings, a criminologist with the Ohio State Highway Patrol Crime Lab, testified he tested appellant's blood sample and determined appellant's blood alcohol level to be .108 grams percent by weight of blood. Relative to the chain of custody, Billings testified the crime lab received the blood sample on March 24, 2000, at 10:57 a.m. As is the lab's procedure, a piece of evidence is given a time stamp as soon as it arrives at the lab. Billings noted he took possession of the sample at 1:00 p.m. on March 24, 2000. On cross-examination, Billings explained the evidence receiving sheet, which is computer generated, designates a laboratory number to the particular sample, provides general case information, and, as to appellant's sample, indicates Kimberly Palmer, a laboratory technician, opened the case on March 24, 2000. Billings acknowledged Palmer's signature does not appear on the property control form. Pursuant to standard procedures in the laboratory, Billings stated Palmer placed the sample in the refrigerator.
The State's final witness was Shelly Burris, a nurse in the emergency room at Aultman Hospital. Burris' testimony was heard in camera. Following her examination, the trial court sustained appellant's objections to Burris' testimony and ruled the testimony would be inadmissible. Thereafter, the State rested its case. Appellant made an oral Crim.R. 29 motion for acquittal, which the trial court overruled.
Appellant called Donald Witmer, a lieutenant with the Massillon Police Department, as his sole witness. Based upon his experience and observations, Witmer stated appellant's vehicle was probably traveling in excess of 40 mph when the collision occurred. Witmer described his personal observations of the trauma and bruising to appellant's lower torso. Witmer photographed appellant's person on March 26, 2000, and said photographs were admitted into evidence. Witmer opined, based upon his training and experience, appellant was located in the backseat of the vehicle. On cross-examination, Witmer testified, after speaking with appellant at the hospital, he returned to the scene and found a green beer bottle approximately fifteen to twenty feet away from the vehicle. The lieutenant also acknowledged someone was driving the vehicle at the time of the collision based upon the damage to the steering wheel.
Thereafter, appellant rested and renewed his oral motion for acquittal, which the trial court again overruled. The parties presented closing arguments and the trial court instructed the jury. The jury found appellant guilty of operating a motor vehicle under the influence of alcohol, and not guilty of operating a motor vehicle while under suspension. The trial court then dismissed the jury.
The trial court accepted the jury's verdicts and also found appellant guilty of the two minor misdemeanor charges, failure to control and no seatbelt. On the operating a motor vehicle under the influence count, the trial court sentenced appellant to 180 days in county jail, with all the time suspended except for 30 days. The trial court also imposed a fine of $500 plus court costs and ordered appellant to complete the Quest program. Appellant's license was suspended for a period of two years. Relative to the failure to control charge, the trial court ordered appellant to pay costs. The trial court imposed a fine of $25 plus court costs on the no seatbelt charge. The convictions and sentences were memorialized via Judgment Entry filed May 23, 2000.
It is from these convictions and sentences appellant prosecutes his appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S/APPELLANT'S MOTION TO SUPPRESS AND MOTION TO DISMISS.
 II. THE TRIAL COURT ERRED IN ADMITTING, OVER OBJECTION, TESTIMONY AT TRIAL THAT SHOULD HAVE BEEN, BUT WAS NOT, PRESENTED AT THE SUPPRESSION HEARING.
 III. THE TRIAL COURT ERRED IN ADMITTING, OVER OBJECTION, THE STATE'S BLOOD ALCOHOL TEST AND/OR "SUPPORTING" TESTIMONY AT TRIAL.
 IV. THE TRIAL COURT ERRED IN ADMITTING, OVER OBJECTION, THE TESTIMONY OF MEDICAL PROVIDERS/PARAMEDICS AT TRIAL.
 V. THE TRIAL COURT ERRED IN OVERRULING, WITHOUT A HEARING, DEFENDANT'S/APPELLANT'S MOTION FOR MISTRIAL.
 VI. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 VII. THE TRIAL COURT ERRED IN FINDING DEFENDANT/APPELLANT GUILTY, WITHOUT SEPARATE/BENCH TRIAL, OF A SEATBELT VIOLATION AND FAILURE TO CONTROL.
 I
In his first assignment of error, appellant maintains the trial court erred in overruling his Motion to Suppress and Motion to Dismiss.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and Statev. Guysinger (1993), 86 Ohio App.3d 592 . As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
Appellant submits the trial court's ruling was erroneous for two reasons. First, appellant contends the trial court erred in finding Trooper Rivera had probable cause to arrest appellant. Appellant also asserts the trial court erred in failing to suppress the result of his blood alcohol test because the State did not meet its burden of proof in that the State failed to provide a foundation for the admission of the test during the suppression hearing, and failed to demonstrate an unbroken chain of custody.
In support of his assertion Trooper Rivera lacked probable cause, appellant cites this Court to several cases, which have held certain physical indicia of alcohol ingestion alone does not provide sufficient probable cause to arrest. State v. Taylor (1981), 3 Ohio App.3d 197. ("The mere odor of alcohol about a driver's person, not even characterized by such customary adjectives as `pervasive' or `strong', may be indicia of alcohol ingestion, but is no more probable indication of intoxication than eating a meal is of gluttony."); State v. Finch (1985),24 Ohio App.3d 38; ("[M]erely appearing to be too drunk to drive is not * * * enough to constitute probable cause for arrest."); State v. Cochran
(Aug. 6, 1990), Warren App. No. CA89-11-070, unreported. ("[T]he fact that appellant merely appeared to have been drinking did not establish that he was intoxicated or that his intoxication was a proximate cause of the accident.") We find these cases to be factually distinguishable from the instant action.
In State v. Taylor, supra, defendant-appellee was stopped for speeding and, upon initial contact with him, the arresting officers detected an odor of alcohol. Id. Defendant-appellee performed breathalyzer and urine tests. Id. He was ultimately charged with OMVI. Id. The trial court record did not indicate the excess speeding for which defendant-appellee was initially stopped was anything more than nominal. Id. The trial court and the First District Court of Appeals found the "act of speeding at a nominal excess coupled with the arresting officers' perception of the odor of alcohol, and nothing more, did not furnish probable cause to arrest the defendant for driving under the influence." Id. at 198. InState v. Finch, supra, the arresting officer did not witness the defendant-appellee driving in an unsafe manner, did not witness any impaired motor coordination, and had not conducted field sobriety tests.Id. at 38. The arresting officer testified the defendant-appellee appeared drunk (strong odor of alcohol, bloodshot eyes, flushed face, and slurred speech). Id. Because the officer placed the defendant-appellee under arrest prior to determining his level of intoxication, the Brown County Court of Appeals found the arrest was premature. Id. at 40. Furthermore, State v. Cochran, supra, is inapplicable as the court of appeals therein was reviewing whether a conviction after a jury trial was supported by the manifest weight of the evidence.
In the instant action, the facts supporting Trooper Rivera's arrest of appellant for driving under the influence are much more convincing than the facts of the cases relied upon by appellant. Appellant's speech was slurred, his eyes were bloodshot, and, according to the testimony of several witnesses at the scene, he had a strong odor of alcohol emanating from his person. Although Trooper Rivera did not observe appellant driving, the trooper arrived at the scene and found appellant laying outside the driver's door of his automobile with an odor of alcohol upon his person. Appellant's apparent fault in the accident indicates his driving ability may have been impaired. Additionally, appellant admitted he been drinking before the accident. Based upon the totality of the circumstances, we find Trooper Rivera had probable cause to arrest appellant.
With respect to appellant's assertion the State did not meet its burden of proof because it failed to lay the requisite foundation for admission of the blood test at the suppression hearing, as noted infa, the trial court implicitly found in appellant's favor on this issued based upon its decision the blood test results would be inadmissible at trial in the absence of expert testimony. With respect to appellant's assertion the State failed to demonstrate an unbroken chain of custody with regard to the blood test results, we find such issues should have been addressed at trial. The failure to establish a complete chain of custody goes to the credibility or weight to be given to the evidence, rather than the admissibility of such evidence. State v. Mayes (1996), 108 Ohio App.3d 598. Because this issue was not the proper subject of a suppression motion, we find the trial court did not err in not suppressing the blood alcohol results on this ground.
Appellant's first assignment of error is overruled.
 II, III
In his second assignment of error, appellant contends the trial court erred in admitting testimony at trial which was not presented at the suppression hearing. In his third assignment of error, appellant asserts the trial court erred in permitting the State to "cure" evidentiary deficiencies of the suppression hearing at trial through the admission of appellant's blood alcohol test results and the testimony of David Billings and James Ferguson.[1]
Following the completion of the suppression hearing, the trial court made the following statement on the record:
 BY THE COURT: Okay. The three issues will be addressed as follows, one at a time. * * * Now, the third prong, the — I think by agreement of the parties, the test results are outside the two hours, so without the testimony of an expert, which the State's permitted to present expert testimony, the test results don't come in, and I caution the State that I have no idea what you're gonna do in your case, but you better not mention a test result without an expert being here. * * *
Suppression Hearing at 79-80.
In City of Newark v. Lucas (1988), 40 Ohio St.3d 100, the Ohio Supreme Court held:
 2. In a criminal prosecution for violation of R.C. 4511.19(A)(1), or of a municipal ordinance relating to operating a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation.
Id. at para. 2 of syllabus.
In accordance with City of Newark v. Lucas, supra, and its prodigy, we find the trial court did not abuse its discretion in allowing the State to present expert testimony at trial which was not presented at the suppression hearing.
Appellant's second and third assignments of error are overruled.
 IV
In his fourth assignment of error, appellant argues the trial court erred in admitting the testimony of Jonathen Smith and James Haney, the paramedics, who provided appellant with medical care at the scene of the accident. Specifically, appellant claims he never waived his physician/patient privilege with respect to the paramedics.
Paramedics Smith and Haney were permitted to testify regarding their observations of appellant and the accident scene. As fact witnesses, they were fully competent to testify regarding the condition of the interior of appellant's vehicle.
Appellant's fourth assignment of error is overruled.
 V
In his fifth assignment of error, appellant maintains the trial court erred in overruling his motion for mistrial. Specifically, appellant asserts the trial court should have conducted a formal hearing on Trooper Rivera's alleged improper communication with a juror, rather than merely informally questioning the trooper and the trial court's bailiff.
The decision whether or not to declare a mistrial is within the sound discretion of the trial court. State v. Glover (1988), 35 Ohio St.3d 18,19. Because our standard of review is abuse of discretion, we will not reverse absent an unreasonable, arbitrary, or unconscionable decision by the trial court. State v. Lyles (1989), 42 Ohio St.3d 98, 100.
The trial court inquired of Trooper Rivera and the bailiff as to the alleged conversation with the juror. After gathering this information, the trial court overruled appellant's motion for mistrial. The trial court did not question the juror. Although the better practice would have been for the trial court to make an inquiry of the juror, we find the trial court did not abuse its discretion in overruling appellant's motion for mistrial based upon the information obtained through the questioning of Trooper Rivera and the bailiff.
Appellant's fifth assignment of error is overruled.
 VI
In his sixth assignment of error, appellant raises a manifest weight of the evidence claim. Specifically, appellant asserts the jury lost its way and ignored the evidence relative to the amount of bruising appellant actually sustained on his belly in light of the opinion given by Trooper Rivera.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Based upon the facts noted supra, and the entire record, we do not find the jury's verdict was against the manifest weight of the evidence. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. There was sufficient, competent circumstantial evidence to support the jury's finding appellant was driving his vehicle at the time of the collision.
Appellant's sixth assignment of error is overruled.
 VII
In his final assignment of error, appellant argues the trial court erred in finding him guilty of the no seatbelt and failure to control charges without conducting a separate bench trial.
We find no error in the trial court's not conducting a separate bench trial on the minor misdemeanor charges.
Appellant's seventh assignment of error is overruled.
The judgment of the Canton Municipal Court is affirmed.
 _______________ Hoffman, J.
Farmer, J. and Milligan, V.J. concur
[1] Despite the State's assertion to the contrary, we find appellant did, in fact, object to the admission of the aforementioned evidence.See, T. at 90-92 and 191-198.