OPINION
{¶ 1} Appellant State of Ohio appeals the November 21, 2005, Judgment Entry of the Delaware County Common Pleas Court's granting Appellee's motion to suppress and motion in limine.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On March 25, 2005, Appellee Michael Hassler was indicted on one count of Aggravated Vehicular Homicide, in violation of R.C. 2903.06(A). Said indictment alleged that he was operating a motor vehicle which was involved in a one-car accident in which Leondra May was killed on January 12, 2005.
 {¶ 3} The State wanted to introduce as evidence the results of a blood test taken seven to eight hours after the accident as well as testimony from two patrol officers as to the speed of Appellee's vehicle at the time of the accident. The delay in performing the blood test was caused by Appellee's refusal of same, requiring the police to first obtain a search warrant for the collection of such evidence.
 {¶ 4} On July 25, 2005, Appellee filed a Motion to Suppress the blood-alcohol concentration test which was taken from Appellee and a Motion in Limine with regard to two Westerville Police Officers giving their opinion as to the speed of Appellee's vehicle at the time of the accident.
 {¶ 5} The State of Ohio did not file a response to either motion.
 {¶ 6} On November 10, 2005, an evidentiary hearing was held on said motions.
 {¶ 7} Following such evidentiary hearing, the trial court sustained both the Motion to Suppress and the Motion in Limine.
 {¶ 8} It is from such decision that Appellant State of Ohio now appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 9} "I. THE TRIAL COURT ERRED WHEN IT HELD THAT THE SUPREME COURT DECISION IN STATE V. MAYL PRECLUDED EVIDENCE OF A DEFENDANT'S BLOOD ALCOHOL LEVEL IN A PROSECUTION FOR A VIOLATION OF 2903.06 IF THE SAMPLE WAS OBTAINED OUTSIDE THE TWO HOUR LIMIT SET OUT IN 4511.19(D).
 {¶ 10} "II. THE TRIAL COURT ERRED IN DETERMINING THAT THE TESTIMONY OF THE ACCIDENT INVESTIGATORS WAS INADMISSIBLE AS EXPERT TESTIMONY."
 I. {¶ 11} In his first assignment of error, Appellant argues that the trial court erred when it granted Appellee's motion to suppress based on State v. Mayl. We disagree.
 {¶ 1} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App.3d 93,96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; State v.Guysinger (1993), 86 Ohio App.3d 592.
 {¶ 2} In the instant appeal, Appellant State of Ohio argues that the trial court should have denied Appellee's Motion to Suppress based on Newark v. Lucas (1988), 40 Ohio St.3d 100, wherein the Ohio Supreme Court held that in a criminal prosecution for violation of R.C. § 4511.19(A)(1), the results presented with expert testimony may be admissible despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation. Id. at paragraph two of the syllabus. However, it further held that in a criminal prosecution for a violation of R.C. § 4511.19(A)(2), (3) or (4),[1] the results of a properly administered bodily substances test are admissible only if the bodily substance is withdrawn within two hours of the time of the alleged violation.
 {¶ 12} The Court in Lucas explained the reasoning for this distinction by noting:
 {¶ 13} "In prosecutions for violations of such sections [as R.C. 4511.19(A)(1)], the amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. See Taylor, Drunk Driving Defense (2 Ed. 1986) 394, Section 6.0.1. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section. It is the behavior of the defendant which is the crucial issue. The accuracy of the test is not the critical issue as it is in prosecutions for per se violations." Id. at 104, 532 N.E.2d 130.
 {¶ 14} More recently, in State v. Mayl, 106 Ohio St.3d 207,833 N.E.2d 1216, 2005-Ohio-4629, the Supreme Court held:
 {¶ 15} "When results of blood-alcohol tests are challenged in an aggravated vehicular-homicide prosecution that depends upon proof of an R.C. 4511.19(A) violation, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible.
 {¶ 16} In reaching its holdings, the Court examined R.C.4511.19(D)(1) and the regulations set out in the Administrative Code describing how bodily substance samples should be collected (Ohio Adm. Code 3701-53-05) and tested (Ohio Adm. Code3701-53-03(A)), along with regulations requiring certification of personnel (Ohio Adm. Code 3701-53-07(A)) and laboratory requirements (Ohio Adm. Code 3701-53-06(A)). The Court noted that these regulations have been designed to ensure the accuracy of bodily substance test results. Id. at 212.
 {¶ 17} Revised Code § 4511.19(D)(1) provides:
 {¶ 18} "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's * * * blood * * * or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation.
 {¶ 19} "When a person submits to a blood test at the request of a law enforcement officer * * *, only a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw blood for the purpose of determining the alcohol, drug, or alcohol and drug content * * *
 {¶ 20} "The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."
 {¶ 21} In Mayl, supra, the Supreme Court examined the evidence presented at the suppression hearing and concluded that the burden was on the State to show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results were admissible. Id. at 214. In discussing substantial compliance, the Court, quoting from State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71
stated:
 {¶ 22} "`[R]igid compliance with the Department of Health regulations is not necessary for test results to be admissible. * * * To avoid usurping a function that the General Assembly has assigned to the Director of Health, however, we must limit the substantial compliance standard set forth in [State v.]Plummer [(1986), 22 Ohio St.3d 292, 490 N.E.2d 902] to excusing only errors that are clearly de minimis. Consistent with this limitation, we have characterized those errors that are excusable under the substantial-compliance standard as "minor procedural deviations."'" Id. at 214.
 {¶ 23} The Court concluded that in several instances where Mayl alleged deviations from the ODH regulations, there was substantial compliance. These deviations included the failure to refrigerate the sample for one hour and 45 minutes prior to testing and the use of a gel anticoagulant as a solid. Id. at 215.
 {¶ 24} The Court did, however, conclude that two of the alleged deviations did not meet the substantial compliance standard: the lack of permits from the Director of Health and the lab's failure to maintain the blood sample for one year. The Court concluded, "[w]e cannot excuse the absence of the proper permits and the disposal of the sample within a matter of days as minor procedural deviations. Consequently, the state has not shown substantial compliance with ODH regulations." Id. at 215.
 {¶ 25} Finally, and more importantly for purposes of this appeal, the Court noted that R.C. § 4511.19(D)(1) applies to all prosecutions requiring proof of a violation of R.C. § 4511.19(A) or (B). The Court stated that it does not matter whether the prosecution is pursued as a "per se"[2] violation or an "under the influence"[3] violation. Id. at 217.
 {¶ 26} Thus, in this case the State was required to show substantial compliance with R.C. § 4511.19(D)(1) and the applicable ODH regulations in order for the blood test results to be admissible. The state failed to do so.
 {¶ 27} While it is disturbing that an individual can hypothetically escape the consequences of his actions by refusing to submit to a chemical test, thus requiring the need for law enforcement to obtain a search warrant within the required two-hour time period, barring legislative action, we are bound by the Supreme Court's strict application of such statute as stated in Mayl, supra.
 {¶ 28} Based on the foregoing, this Court finds Appellant's first assignment of error not well-taken. Appellant's first assignment of error is overruled.
 II. {¶ 29} In his second assignment of error, Appellant State of Ohio argues that the trial court erred in holding that testimony of the accident investigators was inadmissible. We disagree.
 {¶ 30} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court and that court's ruling as to such matters will not be reversed absent an abuse of discretion. See: Krischbaum v. Dillon (1991), 58 Ohio St.3d 58,66, 567 N.E.2d 1291; Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271, 569 N.E.2d 1056. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d.
 {¶ 31} In the case sub judice, the trial court conducted an Evid.R. 104 hearing in relation to Appellee's Motion in Limine to determine whether the testimony of the police officers as to the speed of Appellee's vehicle would be admissible at trial.
 {¶ 32} The trial court heard testimony from both officers as to their qualifications and experience. The trial court further heard testimony as to the method employed by the officers in calculating the measurements at the scene of the accident wherein they used a drag sled.
 {¶ 33} The trial court also heard testimony from Appellee's expert who is a Professional Engineer who works in the area of accident reconstruction on a regular basis. He testified that it was his opinion that the method employed by the officers in this case was not suited to this type of accident in that (1) the weight of the sled was not the same as the weight of the vehicle; (2) the weather conditions were different; (3) the vehicle path was curved showing that the tires were moving; and (4) the tires were not covered in mud. Based on the foregoing, said expert testified that an accurate estimation of Appellee's speed could not have been determined by the use of a drag sled.
 {¶ 34} Evidence Rule 702 provides:
 {¶ 35} "A witness may testify as an expert if all of the following apply:
 {¶ 36} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 37} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 38} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 39} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 40} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 41} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 42} This Court discussed admission of scientific evidence in Abon Ltd. v. Transcontinental Insurance Co., Richland App. No. 2004-CA-0029, 2005-Ohio-3052:
 {¶ 43} "An extremely thorough and well researched analysis on the admissibility of scientific evidence in Ohio was conducted by the Fourth District Court of Appeals in Valentine v. Valentine
(2001), 158 Ohio App.3d 615, 2004-Ohio-4521,821 N.E.2d 580, appeal allowed 104 Ohio St.3d 1438, 2004-Ohio-7033,819 N.E.2d 1122. In Valentine, the court noted: `[i]n general, courts should admit expert testimony whenever it is relevant and satisfies Evid.R. 702. State v. Nemeth (1998),82 Ohio St.3d 202, 207, 694 N.E.2d 1332; see, also, State v. Williams (1983),4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444. Thus, the trial judge must perform a `gatekeeping' role to ensure that expert testimony is sufficiently (a) relevant and (b) reliable to justify its submission to the trier of fact. See Kumho Tire,526 U.S. at 152, 119 S.Ct. 1167, 143 L.Ed.2d 238; Daubert v.Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579, 589,113 S.Ct. 2786, 125 L.Ed.2d 469; Nemeth, 82 Ohio St.3d at 211,694 N.E.2d 1332; Douglass, 153 Ohio App.3d 350, 2003-Ohio-4006,794 N.E.2d 107, at ¶ 32.
 {¶ 44} "In performing its gatekeeping function, the trial court's starting point should be Evid.R. 702, which provides that a witness may testify as an expert if all of the following apply: `(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable, scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply: (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) The design of the procedure, test, or experiment reliably implements the theory; (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.'
 {¶ 45} "* * * * The court made it clear in Kumho Tire Co.
that the reliability analysis adopted in Daubert for scientific experts also applied to experts with other types of technical or specialized knowledge. But it is critical to realize that the analysis of reliability is flexible and its indicators may vary from discipline to discipline. Daubert, 509 U.S. at 593,113 S.Ct. 2786, 125 L.Ed.2d 469; see, also, Moore v. Ashland Chem.,Inc. (C.A.5 1997), 126 F.3d 679, at 686-688. Thus, the court should proceed in a two-step process that first identifies the indicators of reliability that are appropriate for the discipline involved and then applies them. . . .
 {¶ 46} "In order to determine reliability, a court must assess whether the reasoning or methodology underlying the testimony is valid. Miller, 80 Ohio St.3d at 611,687 N.E.2d 735, citing Daubert, 509 U.S. at 592-593, 113 S.Ct. 2786,125 L.Ed.2d 469. Thus, an expert may not base an opinion upon `subjective belief or unsupported speculation.' Daubert,509 U.S. at 590, 113 S.Ct. 2786, 125 L.Ed.2d 469; see, also, Statev. Hurst (Mar. 7, 2000), Franklin App. No. 98AP-1549, 2000 WL 249110. Instead, the expert's opinion must be based on methods and procedures that meet the level of intellectual rigor demanded by the relevant discipline. See In re: Paoli (C.A.3, 1994),35 F.3d 717, 742, citing Daubert, 509 U.S. at 590, 113 S.Ct. 2786,125 L.Ed.2d 469. The `[p]roposed testimony must be supported by appropriate validation-i.e., `good grounds,' based on what is known.' Daubert, 509 U.S. at 590, 113 S.Ct. 2786,125 L.Ed.2d 469. And `where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, * * * the trial judge must determine whether the testimony has a `reliable basis in the knowledge and experience of [the relevant] discipline.' `Kumho, 526 U.S. 137,119 S.Ct. 1167, 143 L.Ed.2d 238, quoting Daubert, 509 U.S. at 592,113 S.Ct. 2786, 125 L.Ed.2d 469; see, also, Daniel J. Capra, TheDaubert Puzzle (1998) 32 Ga.L.Rev. 699, 705 (`In deciding the question of admissibility, trial judges must consider the degree to which the accuracy of scientific information has been established. The less certain the scientific community is about information, the less willing courts should be to receive it"). In other words, `[s]cientific evidence and expert testimony must have a traceable, analytical basis in objective fact before it may be considered on summary judgment.' Bragdon v. Abbott
(1998), 524 U.S. 624, 653, 118 S.Ct. 2196, 141 L.Ed.2d 540; see, also, Gen. Elec. Co. v. Joiner (1997), 522 U.S. 136, 144-146,118 S.Ct. 512, 139 L.Ed.2d 508. However, [t]he grounds for the expert's opinion merely have to be good[;] they do not have to be perfect. Paoli, 35 F.3d at 744.
 {¶ 47} "A court resolving a reliability question should consider the `principles and methods' the expert used `in reaching his or her conclusions, rather than trying to determine whether the conclusions themselves are correct or credible.'Nemeth, 82 Ohio St.3d at 210, 694 N.E.2d 1332; see, also,Miller, 80 Ohio St.3d 607, 687 N.E.2d 735, paragraph one of the syllabus. As the Daubert court stated, in assessing reliability, `[t]he focus * * * must [generally] be * * * on principles and methodology, not on the conclusions that they generate.' Daubert, 509 U.S. at 595, 113 S.Ct. 2786,125 L.Ed.2d 469.
 {¶ 48} In the instant case, the trial court found that while the officers met the requirements as to qualifications and training, and that while their testimony was based on reliable scientific principles, the State failed to meet its burden by a preponderance of the evidence that such testing reliably implemented the theory or that the test was conducted in a way that would yield an accurate result. (See 11/21/05 Judgment Entry at 4.
 {¶ 49} Upon review, we do not find that the trial court's decision to exclude the above testimony of the officers was an abuse of discretion.
 {¶ 50} Appellant State of Ohio's second assignment of error is overruled.
 {¶ 51} Accordingly, the judgment of the Delaware County Common Pleas Court is affirmed.
Boggins, J. Hoffman, P.J. concurs separately Edwards, J. concurs.
[1] R.C. 4511.19(A)(1), (2), (3), and (4) were amended on September 23, 2004. They are now contained in R.C.4511.19(A)(1)(a), (b), (c), and (d).
[2] R.C. 4511.19(A)(1)(b) through (i) and (B).
[3] R.C. 4511.19(A)(1)(a).
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Common Pleas Court, Delaware County, Ohio, is affirmed. Costs assessed to Appellant.