[Cite as *State v. Martin*, 2014-Ohio-2948.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 14-CA-5 |
| SHAYNE MARTIN | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Criminal appeal from the Licking County
                                                            Municipal Court, Case No.13TRC08832

JUDGMENT:                                      Affirmed

DATE OF JUDGMENT ENTRY:          June 30, 2014

APPEARANCES:

For Plaintiff-Appellant                      For Defendant-Appellee

TRICIA MOORE                               ANDREW SANDERSON
Assistant Law Director                      Burkett & Sanderson, Inc.
40 West Main Street                         73 North Sixth Street
Newark, OH 43055                          Newark, OH 43055

*Gwin, P.J.*

{¶1} Defendant-appellant Shayne Martin ["Martin"] appeals the November 1, 2013 Judgment Entry of the Licking County Municipal Court denying his motion to suppress evidence. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} On September 1, 2013, Martin was arrested and charged with driving under the influence and related traffic offenses. Martin was arraigned on the charges contained in the complaint on September 4, 2013, and entered a plea of not guilty to the offenses charged. On September 23, 2013, two motions to suppress evidence were filed on behalf of Martin. An oral hearing was held on the motions on October 25, 2013. The following facts were presented during the hearing on Martin's motions to suppress.

{¶3} On September 13, 2013, Rebecca Black heard a noise in front of her house but did not notice anything unusual at the time. (ST. at 15). After noticing that traffic was beginning to back up, Ms. Black's son and daughter went to investigate. (ST. at 15-16). Upon observing an overturned vehicle, Ms. Black called 9-1-1 at 8:17 a.m. (Id. at 16). Ms. Black estimated she had heard the noise approximately 10 minutes before she placed the call to 9-1-1-. (Id.).

{¶4} Ohio State Highway Patrol Trooper Schneider was dispatched to an accident scene on County Road 668 located in Hopewell Township in Licking County, Ohio. Upon arrival the trooper noticed a Toyota truck overturned and in a ditch. The trooper determined the vehicle had been traveling south bound on County Road 668, left the right side of the road and overcorrected causing the vehicle to travel to the left side of the road and back again to the right side where it overturned. Trooper Schneider

testified that he made contact with the driver and at first did not notice any odor of an alcoholic beverage because of the smell of gasoline, which apparently had escaped from the wrecked Toyota. Trooper Schneider did notice that Martin's eyes were bloodshot and glassy and when he asked Martin if he had consumed any alcohol Martin indicated he had consumed approximately 12 beers and several mixed drinks. (ST. at 12). Martin told the trooper he had stopped drinking at approximately 3:00 or 4:00 a.m.

{¶5} Martin was taken to the trooper's cruiser and once inside, the trooper noticed a moderate odor of an alcoholic beverage emanating from Martin. He also noticed that Martin's speech was slurred and that his face was flushed; however, the trooper conceded upon cross-examination that he did not include either of those observations in his report. (ST. at 22-24).

{¶6} Trooper Schneider then administered the standardized field sobriety tests ["FST"]. Under cross-examination, the trooper conceded that Martin did not fail the one leg stand test and that he had given Martin incorrect instructions on the walk and turn test. The horizontal gaze nystagmus test also was not done in substantial compliance with the so-called National Highway Traffic Safety Administration ["NHTSA"] guidelines.

{¶7} The trooper testified that his arrest was based upon, in addition to the field sobriety tests, the operation of the vehicle which led to the accident, Martin's bloodshot and glassy eyes, the odor of an alcoholic beverage, Martin's slurred speech and Martin's admission to the consumption of alcohol.

{¶8} After considering the evidence presented and the arguments of counsel, the trial court denied the motions to suppress by judgment entry filed November 1, 2013. On January 9, 2014, Martin entered pleas of no contest to the charges contained

in the complaint. The trial court accepted the changes of plea and entered guilty findings. Martin was then sentenced by the trial court to a period of incarceration and related fines.

*Assignment of Error*

{¶9}   Martin raises one assignment of error,

{¶10} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE. "

*Analysis*

{¶11} Martin contends that the trial court erred by overruling his motions to suppress. Specifically Martin argues that the trial court improperly determined that the trooper had probable cause for the warrantless arrest of Martin and that the breath sample was taken beyond the time limits mandated by statute.

{¶12} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law

whether the trial court met the applicable legal standard. *See Burnside,* supra, *citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); *See, generally*, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

*A. Warrantless arrest*

{¶13} A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston*, 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1162(1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589(1975).

{¶14} While field sobriety tests must be administered in substantial compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. *State v. Homan*, 89 Ohio St.3d 421, 732 N.E.2d 952(2000), *superseded by statute on other grounds as stated in State v. Boczar*, 113 Ohio St.3d 148, 863 N.E.2d 155, 2007–Ohio–1251. In *Homan,* the facts which supported a finding of probable cause were: red and glassy eyes, breath which smelled of alcohol, erratic driving and an admission that the suspect had consumed alcohol. In *State v. Lominack*, 5th Dist. Stark No. 2012CA00213, 2013-Ohio-2678, this Court observed,

> The case law is in agreement that probable cause to arrest may exist, even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. *Oregon v. Szakovits*, 32 Ohio St.2d 271, 291 N.E.2d 742(1972); *Fairfield v. Regner*, 23 Ohio App.3d 79, 84, 491 N.E.2d 333(12th Dist.1985); State *v. Bernard,* 20 Ohio App.3d 375, 376, 485 N.E.2d 783(9th Dist.1985); *Westlake v. Vilfroy*, 11 Ohio App.3d 26, 27, 462 N.E.2d 1241(8th Dist.1983); *State v. Judy*, 5th Dist. No.2007–CAC–120069, 2008–Ohio–4520, ¶ 27. Further, the Ohio Supreme Court has made clear that the

officer may testify regarding observations made during a defendant's performance of standardized field sobriety tests even absent proof of "strict compliance." *State v. Schmitt* (2004), 101 Ohio St.3d 79, 2004–Ohio–37, 801 N.E.2d 446, (2004), ¶ 15.

*Lominack*, ¶ 33.

{¶**15**} In the case at bar, the probable cause to arrest Martin for OVI was supported by the trooper's observation of glassy eyes, odor of alcohol, admission that he had been drinking, and the fact that he crashed his vehicle. The judge is in the best position to determine the credibility of witnesses, and his conclusion in this case is supported by competent facts. *See State v. Burnside*, 100 Ohio St.3d 152, 154–55, 797 N.E.2d 71, 74(2003). The fundamental rule that weight of evidence and credibility of witnesses are primarily for the trier of fact applies to suppression hearings as well as trials. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584(1982).

{¶**16**} Accordingly, the totality of the evidence, even excluding the FST's, gave rise to probable cause to arrest for OVI. *Homan* at 427, 732 N.E.2d 952. As such, we find it was not error for the trial court to determine there was probable cause to support Martin's arrest for OVI.

### B. Time limit

{¶**17**} In the case at bar, Martin was originally charged with OVI as both a violation of R.C. 4511.19(A)(1)(a) ["under the influence"] and R.C. 4511.19(A)(1)(h) ["per se"].

{¶18} R.C. 4511.19(A)(1) states in pertinent part: "No person shall operate any vehicle, * * *, if, at the time of the operation, any of the following apply: (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶19} R.C. 4511.19(D)(1)(b) provides,

In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court may admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation. The three-hour time limit specified in this division regarding the admission of evidence does not extend or affect the two-hour time limit specified in division (A) of section 4511.192 of the Revised Code as the maximum period of time during which a person may consent to a chemical test or tests as described in that section. The court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them as described in this division when a person submits to a blood, breath, urine, or other bodily substance test at the request of a law enforcement officer under section 4511.191 of the Revised Code or a blood or urine sample is obtained pursuant to a search warrant.

{¶20} R.C. 4511.19(C) mandates that,

(C) In any proceeding arising out of one incident, a person may be *charged* with a violation of division (A)(1)(a) or (A)(2) and a violation of division (B)(1), (2), or (3) of this section, *but the person may not be convicted of more than one violation of these divisions.*(Emphasis added).

{¶21} In the case at bar, "we first noted that in 1983, the General Assembly had amended R.C. 4511.19 to make 'it illegal to operate a vehicle not only while under the influence of alcohol, but also with a proscribed level of alcohol content in one's blood, breath, or urine.' *Lucas,* 40 Ohio St.3d at 103, 532 N.E.2d 130. The effect of the General Assembly's amendment was to divide R.C. 4511.19 into two classification of offenses: the offense of operating a vehicle while under the influence, and the "per se" offense." *State v. Hassler,* 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, ¶10 [footnote omitted].

{¶22} Per se offenses make the blood-alcohol content an element of the offense. The trier of fact must find only "that the defendant operated a vehicle * * * and that the defendant's chemical test reading was at the proscribed level." *Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988). In contrast, for "driving under the influence" in violation of R.C. 4511.(A)(1)(a)*,*

The amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. See Taylor, Drunk Driving Defense (2 Ed.1986) 394, Section 6.0.1. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section. It

is the behavior of the defendant which is the crucial issue... The test

results, if probative, are merely considered in addition to all other evidence

of impaired driving in a prosecution for this offense.

*Lucas*, 40 Ohio St.3d at 104, 532 N.E.2d 130.

{¶23} In *Lucas*, the Ohio Supreme Court noted that a "per se" violation is committed where the amount of alcohol in an individual's bodily substances exceeds the proscribed statutory amount. Id. at 103, 532 N.E.2d 130. The court stressed that accuracy is critical and that allowing admission of chemical analyses of substances withdrawn after the two-hour limit[1] would cause "confusing, unreliable, and inconsistent verdicts." Id. at 104, 532 N.E.2d 130. Accordingly, the court held that in such situations, the results may be admitted in evidence "only if the bodily substance is withdrawn within two [currently three] hours of the time of the alleged violation." Id.

{¶24} In the present case, Martin was charged with OVI based on a violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(h). The trial court chose to sentence Martin under R.C. 4511.19(A)(1)(h)-a prohibited concentration charge-rather than R.C. 4511.19(A)(1)(a) for driving under the influence. Because Martin's conviction and sentence was based on a per se violation of the statute, his blood-alcohol test results were admissible only if the blood sample was taken within the three-hour period set forth in R.C. 4511.19(D). *See,* R.C. 4511.19(C); *State v. Ross,* 2nd Dist. Greene No. 06-CA-0148, 2008-Ohio-1758, ¶26.

---

[1] The General Assembly amended certain portions of that statute in 2006 to allow admissibility of testing obtained within three hours of the alleged violation, but former R.C. 4511.19(D)(1) was otherwise similar to the current version. *State v. Hassler,* 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46. The Court in *Lucas* reviewed the former statutes two-hour window of admissibility.

{¶25} In the case at bar, Trooper Schneider testified that he spoke with the 9-1-1 caller who reported the crash and she estimated the crash to be at 8:07 a.m. The test was administered at 10:27 a.m. and thus within three hours of operation. Miller argues that the statements of the witness are hearsay and should not be admitted or considered by the trial court. However, judicial officials at suppression hearings may rely on hearsay and other evidence to determine whether alcohol test results were obtained in compliance with methods approved by the Director of Health, even though that evidence may not be admissible at trial. *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, paragraph 2 of the syllabus. [Citing Evid.R. 101(C) (1)].

{¶26} Accordingly, the record contains competent, credible evidence that the test was conducted in accordance with statutory requirements and the results were therefore admissible to establish a violation of R.C. 4511.19(A)(1)(h). As a result, the trial court did not err in denying Martin's motions to suppress.

{¶27} Martin's sole assignment of error is overruled.

{¶28} The judgment of the Municipal Court of Licking County, Ohio is affirmed.


By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur